

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-10-2007

# Haddad v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1500

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Haddad v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1122.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1122

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT-PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  06-1500

NABIL HADDAD,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No.: A77-050-374)
Honorable Rosalind K. Malloy, Immigration Judge

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 11, 2007

Before: SMITH, NYGAARD, and HANSEN,[*] *Circuit Judges*

(Filed: May 10, 2007)

_____

OPINION

_____

HANSEN, *Circuit Judge*.

_____

[*]The Honorable David R. Hansen, Senior Circuit Judge of the United States Court
of Appeals for the Eighth Circuit, sitting by designation.

Nabil Haddad seeks review of an order of the Board of Immigration Appeals ("BIA") affirming the August 9, 2004, Order of the Immigration Judge ("IJ") denying his petition for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction to review the petition pursuant to 8 U.S.C. § 1252(a) (2000), and we deny the petition for review.

Haddad is a 36-year-old native and citizen of Syria and is a Roman Orthodox Christian. He testified at his asylum hearing that although Syrians are required to join the Ba'ath Party at age 15, he refused to join on the advice of his older brother, Nedal. At the time, Nedal was a college student and opposed the dictatorship in Syria. In 1987, Haddad witnessed the arrest of Nedal by the Syrian Intelligence Service at their home, where Nedal was beaten, kicked, and taken away. The family was unable to locate Nedal for three years, and he spent six years in prison where he was tortured. Two of Haddad's cousins were similarly arrested and imprisoned for several years.

Haddad attended college at the public university but eventually dropped out, feeling that he was under constant surveillance by the Syrian Intelligence Service. He joined the Syrian military to fulfill his compulsory service, where he claims he was discriminated against based on his Christian faith. He was given less leave time than other soldiers and was denied a request for one day of leave on Easter. Haddad testified that he was jailed in a military jail for one week shortly after he joined the military for refusing to join the Ba'ath Party. He was jailed a second time following the denial of his request for leave time at

Easter. Haddad testified that an argument ensued when he was denied the leave request, during which officers kicked and beat him, and then accused Haddad of cursing the system and the President. He was jailed for one month, during which he was forced to stand inside a tire and was beaten with a cable on several occasions.

Haddad was released from military service after two-and-a-half years, and he testified that he felt he had no alternative but to leave Syria. He fled to Lebanon, where he lived for six or seven years. He attended meetings of the Lebanese Militia, an organization that was critical of the Syrian government, and worked as a butcher. He returned to Syria twice a year to visit his mother during this time, bribing border officials for illegal entry and exit. Haddad testified that he eventually left Lebanon and went to his brother's home in Syria when the Syrian Intelligence Service came to Lebanon looking for him. His brother helped him obtain a passport by bribing an official, although Haddad admitted that he was fingerprinted for the passport. Haddad left Syria through the Damascus airport, again purportedly with the help of a bribed official, and fled to the Virgin Islands. He paid a smuggler to get him into the United States, but was apprehended by the United States Coast Guard when the boat used to smuggle him capsized off the Puerto Rican coast.

Haddad eventually sought asylum, withholding of removal, protection under the Convention Against Torture, and voluntary departure. A hearing was held before an IJ on August 9, 2004, who found that his testimony lacked credibility and denied his application. Haddad appealed to the Board of Immigration Appeals, which affirmed the IJ's decision on

3

January 9, 2006.

Because "the BIA summarily affirm[ed] the findings of the IJ, we review the IJ's decision directly." *Mudric v. Att'y Gen.*, 469 F.3d 94, 101 (3d Cir. 2006). We will uphold the IJ's determination that Haddad was ineligible for asylum "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (internal marks omitted). Where the IJ finds that the petitioner lacks credibility, our review includes ensuring that the IJ's adverse credibility finding "was appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence on country conditions." *Id.* (internal marks omitted). The agency's findings of fact, including any adverse credibility determinations, "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Xie v. Ashcroft*, 359 F.3d 239, 243 (3d Cir. 2004).

Haddad seeks asylum claiming a well-founded fear of persecution on account of his political opinion and his religion. *See* 8 U.S.C.A. § 1158(b)(1)(A) (West 2005) ("The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who . . . is a refugee . . . ."); 8 U.S.C. § 1101(a)(42)(A) (2000) (defining "refugee" as a person unwilling or unable to return to his country of nationality because of persecution on account of five enumerated bases, including religion and political opinion). While the decision to grant or deny an asylum application is discretionary, a petitioner is entitled to withholding of removal if he demonstrates a clear probability that his life or freedom would be threatened

4

if returned to his country of nationality. *See* 8 U.S.C. § 1231(b)(3)(A) (2000); *see also Gabuniya v. Att'y Gen.*, 463 F.3d 316, 320-21 (3d Cir. 2006). Haddad may also qualify for relief under the CAT if he can demonstrate that it is more likely than not that he will be tortured if he is removed to Syria. *See* 8 C.F.R. § 208.16(c)(2)).

Haddad claims that his military detention amounted to past persecution based both on his political opinion and his religion, giving rise to a presumption of future persecution. *See Ghebrehiwot v. Att'y Gen.*, 467 F.3d 344, 351 (3d Cir. 2006) ("An applicant who offers credible testimony regarding past persecution is presumed to have a well-founded fear of future persecution."). He also claims that he would be persecuted upon return to Syria because he left the country with an illegally obtained passport.

The IJ denied Haddad's petition because she found that Haddad lacked credibility for several reasons. First, his I-589 Application did not mention either of the two military detentions or his claim that he joined the Lebanese Militia. The military detentions were first raised in an affidavit submitted shortly before the hearing. Further, the IJ discredited Haddad's claim that his military detention was on account of his religion as inconsistent with the Department of State Report on Human Rights Practices, which indicated no systemic persecution of Christians by the Syrian government. The IJ disbelieved Haddad's assertion that the military put him in detention for refusing to join the Ba'ath Party as his service in the military demonstrated his allegiance to the government. Finally, the IJ discredited Haddad's assertion that the Syrian Intelligence Agency came to Lebanon looking for him after he had

5

been living and working openly in Lebanon for several years, had obtained renewals of his papers to remain in Lebanon from the Lebanese government every six months during that time, and returned to Syria twice a year to visit his mother.

In addition to finding Haddad's claims incredible, the IJ determined that he failed to establish that he would face persecution upon return to Syria. Most of his family, including his brother who was imprisoned for several years, remained in Syria. His passport and exit permit were issued by the Syrian government, and his passport contained a valid, confirmed stamp from the Syrian government, which permitted him to leave the country with the government's permission and knowledge. The alleged facts that the stamp was the result of a bribe and that it allowed him to depart Syria illegally were not evident from the passport and did not give the Syrian government reason to persecute him upon his return.

The IJ's determinations, including her credibility findings, are supported by the record. We agree that Haddad has not provided credible evidence that he was persecuted in the past based on his religion or political opinion. The only times Haddad claims to have been persecuted involve the two military detentions. The denial of leave time certainly does not amount to persecution, which we have repeatedly explained requires "extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Ahmed v. Ashcroft*, 341 F.3d 214, 217 (3d Cir. 2003) (internal marks and citations omitted). Even though he was confined on two occasions for periods of one week and one month respectively and allegedly beaten during that time, there

6

is no evidence that the detentions and beatings were precipitated by Haddad's religion or political opinion as opposed to a response to military infractions. The detentions occurred early in his military career, and Haddad remained in the military for two-and-a-half years without further incident. The failure to include these detentions in his I-589 Application support both the IJ's determination that the detentions were not a result of persecution as well as the IJ's adverse credibility findings. *See Xie*, 359 F.3d at 243.

As noted by the IJ, much of Haddad's testimony focused primarily on persecution suffered by Haddad's brother as opposed to Haddad himself. A petitioner must establish a particularized fear of persecution to be eligible for asylum. *See Cham v. Att'y Gen.*, 445 F.3d 683, 693 (3d Cir. 2006) ("An applicant 'cannot rely solely on the persecution of [his] family members to qualify for asylum . . . .'" (quoting *Ciorba v. Ashcroft*, 323 F.3d 539, 545 (7th Cir.2003))). While evidence of persecution of family members can be relevant when the factual basis for the persecution is similar or the political persecution is based on the family relationship itself, *see id.*, persecution of family members becomes less relevant when the persecuted family member remains in the country unharmed, *see Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished."). A family member's persecution also loses relevance for the petitioner when the basis for the persecution of the family member cannot be imputed to the

7

petitioner. *See Tamas-Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir. 2000) (rejecting an asylum claim based on "derivative persecution"). Haddad has not established that the Syrian government persecuted him based on the actions of his brother or that it otherwise believed that Haddad shared his brother's views. The persecution suffered by Haddad's brother does not provide an objective basis for Haddad to fear persecution if returned to Syria. The lack of credibility and the lack of evidence to support a well-founded fear of persecution likewise support the IJ's denial of Haddad's claims for withholding of removal. *See Obale v. Attorney General*, 453 F.3d 151, 161 (3d Cir. 2006) ("An applicant who does not qualify for asylum necessarily does not qualify for withholding of removal"). Further, Haddad has offered no evidence that he would be tortured, and he therefore is not entitled to relief under the CAT. *See Ghebrehiwot*, 467 F.3d at 352-53 (explaining difference between relief under CAT and asylum).

Haddad also claims that the IJ erroneously relied on the fact that he was married to a United States permanent resident, giving Haddad another avenue for seeking permission to remain in the United States, in denying his petition. The BIA rejected this claim in its review, finding that the IJ merely commented on this avenue of relief in passing but did not base the denial of relief on the possible availability of relief through Haddad's spouse. (Add. at A3.) We agree with the BIA's assessment of the IJ's comments. That Haddad was married to a United States permanent resident was not revealed until late in the hearing. It is clear from the IJ's reasoning that she denied the petition based on the lack of evidence to support

8

a claim of a well-founded fear of persecution. The IJ merely noted that if Haddad's petition for asylum was denied, the process for obtaining relief through his spouse could be proceeding simultaneously.

For the foregoing reasons, we conclude that substantial evidence supports the IJ's decision denying Haddad's petition, and we will therefore deny the petition for review.