

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-2007

# Matoke v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2376

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Matoke v. Atty Gen USA" (2007). *2007 Decisions.* Paper 382.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/382

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2376

_____

MARKUS MATOKE,
                                    Petitioner,

vs.

Attorney General of the United States,
                                    Respondent.

_____

On Petition for Review of an Order of
the Board of Immigration Appeals
U.S. Department of Justice
(BIA No. A97-150-156)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 20, 2007

Before: SLOVITER, SMITH, and GARTH, Circuit Judges.

(Opinion Filed: September 25, 2007)

_____

OPINION

_____

Garth, Circuit Judge:

Petitioner Markus Matoke seeks review of the decision of the Board of Immigration Appeals ("BIA") affirming the decision of the immigration judge ("IJ"), which denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We will dismiss Matoke's Petition for Review respecting his application for asylum and we will deny his Petition for Review as to all other claims.

## I.

Petitioner Markus Matoke is a 44 year old male and a native of Indonesia. He was admitted to the United States at Los Angeles, California, on September 11, 1999, as a non-immigrant B-1 visitor with authorization to remain in the United States until December 9, 1999. Matoke remained in the United States beyond that time. On June 4, 2003, the Department of Homeland Security issued a Notice to Appear charging Matoke with removability under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than his visa authorized. Matoke conceded removability, but applied for asylum, withholding of removal, and protection under the CAT.

## II.

On January 20, 2005, the IJ held a hearing on the merits of Matoke's applications. At the hearing, Matoke testified as follows. Matoke is a Protestant/Christian of Chinese ethnicity. He was born in Ambon, Indonesia. In 1981, he moved from Ambon to the city of

Surabaya, Indonesia. In 1994, Matoke moved back to Ambon where he worked as a clothing vendor until January 1999. That year, he returned to Surabaya. In Surabaya, Matoke held a factory job, supervising 200 workers and reporting directly to the owner. The job, though, was low-paying. Matoke remained in this position until his departure in September 1999.

According to Matoke, he returned to Surabaya in 1999 because he had relatives there, and because there were "riots and arrests [] and people who look for [his family]" in Ambon. Matoke testified that Muslims instigated the unrest in Ambon, which they directed at Christians. He stated that Surabaya was "safe" at first, even though he lived in a mixed neighborhood of Muslims and Christians. After rocks were thrown at his home and windows were broken, he moved his family to a neighborhood that was primarily Christian.

Matoke stated that he came to the United States "for security[,] because ... [his] life ... was in danger" in Ambon and Surabaya. He applied for asylum in the United States in April 2003, more than three-and-one-half years after his arrival. When asked why he did not apply within a one year period, he stated that he "was confused and ... did not know how to do it." On his application for asylum, Matoke stated that he and his family had been subjected to persecution by Muslims because they were Chinese and Christian. Matoke also testified that he believed he would be killed if he returned.

Matoke's wife and children still live in a mostly Christian area of Surabaya. When the IJ asked "what would be wrong" with his continuing to live in that area, Matoke responded that rumors were spreading that the family is from Ambon. Matoke added that his oldest son,

who was then twenty-three years old, had "sometimes" been "beaten and punched" while a schoolboy because of his Ambonese accent.

## III.

In an oral decision dated January 20, 2005, the IJ denied Matoke's applications for asylum, withholding of removal, and protection under the CAT. The IJ denied Matoke's asylum application because he did not file it within one year after he entered the United States as required under the INA. The IJ rejected Matoke's assertion that a lack of information and confusion regarding the asylum process excused his compliance with this statutory deadline.[1]

Regarding Matoke's applications for withholding of removal and protection under the CAT, the IJ found his testimony credible but insufficient to establish past persecution or a likelihood of future persecution. The IJ also found insufficient evidence in the record that there was a pattern or practice of mistreatment of Chinese Christians in Indonesia on a nationwide basis. Additionally, the IJ found that Matoke did not establish that he would be tortured by the government, or by someone working with the encouragement of the government, if he returned to Indonesia.

Matoke appealed to the BIA. In an order dated April 6, 2006, the BIA adopted and affirmed the IJ's decision and dismissed the appeal. The BIA noted that Matoke's asylum

---

[1]The IJ also stated that even if Matoke had filed a timely asylum application, the application would be denied because he had failed to show a well-founded fear of future persecution if he returned to Indonesia.

application was time-barred because he failed to file it within one year of his arrival in the United States. In addition, the BIA found that Matoke failed to establish the existence of extraordinary or changed circumstances for his failure to meet the one year deadline. The BIA also noted that "[t]he discrimination [Matoke] experienced does not rise to the level of persecution" and that "if the threat of persecution ... exists at all, he has failed to demonstrate that it exists for him country-wide." Lastly, the BIA agreed with the IJ that "the record evidence does not establish that there is a pattern or practice of persecution of Chinese Christians in Indonesia."

IV.

We exercise jurisdiction to review the BIA's final order of removal under INA § 242(a), 8 U.S.C. § 1252(a). Because the BIA adopted the findings of the IJ and also commented on the sufficiency of the IJ's determinations, this Court reviews the decisions of both the BIA and the IJ. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review these decisions for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (quoting Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001).

V.

We begin by noting that we lack jurisdiction to review the IJ's finding that Matoke's asylum application is time barred (i.e., Matoke arrived in the United States on September 11, 1999, but his application for asylum was not made until April 7, 2003). The INA provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding the timeliness of an asylum application or the existence *vel non* of changed or extraordinary circumstances justifying late filing. 8 U.S.C. § 1158(a)(2), (3); Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003).

Although the subsequently enacted REAL ID Act amended the INA to allow constitutional claims or questions of law to survive its jurisdiction-stripping provisions, see REAL ID Act § 106(a)(1)(A)(iii), 8 U.S.C. § 1252(a)(2)(D), this court has held that claims of changed or extraordinary circumstances to justify an untimely asylum application fall within the Attorney General's *discretion* and therefore do not present a constitutional claim or question of law covered by the REAL ID Act's judicial review provision. Sukwanputra v. Gonzales, 434 F.3d 627, 635 (3d Cir. 2006). Thus, "despite the changes of the REAL ID Act, 8 U.S.C. § 1158(a)(3) continues to divest the court of appeals of jurisdiction to review a decision regarding whether an alien established changed or extraordinary circumstances that would excuse his untimely filing." Mudric v. AG of the United States, 469 F.3d 94, 101 (3d Cir. 2006) (citing Sukwanputra, 434 F.3d at 635). Accordingly, we are without jurisdiction to review the denial of Matoke's asylum application.

VI.

To qualify for withholding of removal, Matoke must establish that his "life or freedom would be threatened in [Indonesia] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). We have interpreted this standard as requiring an applicant to demonstrate that, because of one of the enumerated grounds, "it is more likely than not that he will face persecution if he is deported." Li Wu Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001). The determination of whether a person "has suffered from persecution or whether that person has a well-founded fear of persecution is factual and thus entitled to deference." Neng Long Wang v. Gonzales, 405 F.3d 134, 138 (3d Cir. 2005). The standard for a claim for withholding of removal is more stringent than the standard for asylum. Janusiak v. INS, 947 F.2d 46, 47 (3d Cir. 1991).

The IJ and BIA's determination that Matoke had not shown any evidence of persecution is supported by substantial evidence. We have adopted the BIA's definition of persecution as including "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," while recognizing that persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993) (citing Matter of Acosta, 19 I. & N. Dec. 221, 222 (BIA 1985)); see also Lukwago v. Ashcroft, 329 F.3d 157, 168 (3d Cir. 2003); Lin v. I.N.S., 238 F.3d 239, 244 (3d Cir. 2001).

To support his claim of past persecution, Matoke relies on general civil unrest experienced while living in Ambon, along with criminal activities experienced while living

-6-

in Surabaya. While Matoke may have been victimized by the Ambon riots, such evidence of generalized civil unrest is not sufficient to support a finding of persecution. Konan v. AG of the United States, 432 F.3d 497, 506 (3d Cir. 2005) (holding that violence during generalized unrest is insufficient to show past persecution). Furthermore, even assuming that the criminal activity experienced by Matoke in Surabaya – i.e., having stones thrown at his house – occurred and was motivated by Matoke's race and/or religion, this incident is not severe enough to qualify for persecution. Such incidents are more akin to ordinary criminal activity than persecution. Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001) ("[O]rdinary criminal activity does not rise to the level of persecution necessary to establish eligibility for asylum.") (citations omitted); Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) ("Lie's account of two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution.").

Additionally, the evidence that his son was victimized by beatings does not support Matoke's claim of persecution. A petitioner must establish a particularized fear of persecution. See Cham v. AG of the United States, 445 F.3d 683, 693 (3d Cir. 2006) ("An applicant 'cannot rely solely on the persecution of [his] family to qualify for asylum....'" (quoting Ciorba v. Ashcroft, 323 F.3d 539, 545 (7th Cir. 2003))). While evidence of persecution of family members can be relevant when the factual basis for persecution is similar or the persecution is based on family relationship itself, see id., persecution of family members becomes less relevant when the persecuted family member remains in the country unharmed, see Lie, 396 F.3d at 537 ("[W]hen family members remain in petitioner's native

country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of petitioner's well-founded fear of future persecution is diminished."). Here, Matoke's family continues to live in Surabaya and has remained unharmed in a mainly Christian neighborhood since he left for the United States. Matoke also comes forth with no evidence showing that he would face an individualized risk of persecution more severe than his family members should he return.

Moreover, background information relied upon by the IJ undercuts any finding of a pattern or practice of persecution of Chinese Christians in Indonesia. For instance, the IJ relied on the Department of State Country Report on Human Rights Practices for 2003 ("Country Report"). The Country Report indicates that, while there were many instances of discrimination and harassment during the year, the Indonesian government officially promotes racial and ethnic tolerance. According to the Country Report, ethnic Chinese played a major role in the Indonesian economy and celebrated the Chinese "Lunar New Year" as a national public holiday. There is no report of any violence – threatened or actual – against ethnic Chinese citizens of Indonesia. See Lie, 396 F.3d 530, 538 (3d Cir. 2005) (declining to find that reports of widespread attacks on Chinese Christians in Indonesia, including press accounts of riots, vandalism, and robbery targeting Chinese Christians constitute a pattern or practice of persecution against Chinese Christians).

For these reasons, the IJ's findings that Matoke has failed to demonstrate past persecution or a clear probability of future persecution are supported by substantial evidence. Accordingly, his application for withholding of removal was properly denied.

VII

The IJ's denial of protection under the CAT is also supported by substantial evidence, as Matoke has not provided any evidence "that it is more likely than not that [] [he] would be tortured if removed to the proposed country of removal." Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)).

VIII.

For the foregoing reasons, we will deny the petition for relief.