

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-24-2006

# Mudric v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-2913

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Mudric v. Atty Gen USA" (2006). *2006 Decisions.* Paper 138.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/138

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2913

———

GORAN MUDRIC,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

———

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A70 576 099)
Immigration Judge Craig DeBernardis

Initially Docketed as an Appeal from EDPA No. 02-cv-08279
Prior to the Enactment of the Real ID Act of 2005

———

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2006

Before:  FUENTES, FISHER and McKAY,[*] *Circuit Judges*.

(Filed November 24, 2006)

Christina L. Harding
Gallagher, Malloy & Georges
1760 Market Street, Suite 1100
Philadelphia, PA  19103
    *Attorney for Petitioner*

Sonya F. Lawrence
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106
    *Attorney for Respondent*

————

OPINION OF THE COURT

————

FISHER, *Circuit Judge*.

Goran Mudric petitions for review of the legality of his pending deportation.  In support of his petition, Mudric alleges his Fifth Amendment right to procedural due process was violated by undue Immigration and Naturalization Service

————

[*]The Honorable Monroe G. McKay, United States Circuit Judge for the Tenth Circuit, sitting by designation.

2

("INS")[1] delays in processing certain applications related to his case. Mudric also argues that the Government should be estopped from removing him because he was prevented from obtaining lawful status as a result of the Government's own undue delay. Finally, Mudric claims procedural due process violations occurred in the course of his asylum hearing. For the reasons stated below, we will deny the petition.

I.

Mudric, an ethnic Serb and native and citizen of the former Yugoslavia, entered the United States without inspection at or near Detroit, Michigan on February 27, 1992. Mudric's mother, Ljiljiana Mudric-Meolic, was already residing in the United States at that time, having acquired conditional permanent resident status through her marriage in 1990 to a United States citizen.[2] Mudric formally applied for asylum in

---

[1]As a result of the Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (2002), the Immigration and Naturalization Service has ceased to exist as an agency within the United States Department of Justice. Its enforcement functions now reside in the Bureau of Immigration and Customs Enforcement (BICE) within the Department of Homeland Security. *See also Vente v. Gonzales*, 415 F.3d 296, 299 n.1 (3d Cir. 2005).

[2]On September 24, 1992, Mudric-Meolic filed a petition to remove conditions on her permanent residence. INS approved this application on May 9, 2000. At present, Mudric-Meolic is a naturalized U.S. citizen.

1993 and approximately four years later, on January 24, 1997, INS issued a notice of intent to deny the request for asylum.

Hearings before an Immigration Judge on the subject of Mudric's deportation were held in August of 1997 and February of 1998.[3] At the February 1998 hearing, Mudric testified that he had served in the former Yugoslavian army from 1986 to 1987 and claimed he had suffered persecution at that time because of a relationship he had with a Muslim woman. As evidence of that persecution, Mudric described one incident in which he was hit in the head with a gun by an officer. After that incident, Mudric was allegedly told by friends that he was a "marked man." Mudric offered no further explanation or evidence of persecution. After completing his service in the army, Mudric returned to his home city of Belgrade and eventually became engaged to the unnamed Muslim woman. However, Mudric and the woman never married and the relationship ended when Mudric left for the United States in 1992.

Mudric further testified that he was called back for active service in the army in 1991, at the time of the Yugoslavian Civil War. He only served for two weeks before deserting. When asked why he deserted the army, Mudric replied "I was scared. I was scared. I didn't like it to kill nobody else. Always they

---

[3]At the August 1997 hearing it was established that Mudric had entered without inspection and was therefore subject to deportation. Mudric then renewed his request for asylum. Because Mudric had not provided a full statement of his claim for asylum, the IJ rescheduled a hearing on that matter for February 1998.

teach us and hatred starting too much." When asked whether he had ever expressed any opposition to serving in the army, Mudric testified that he had told only one other fellow soldier, whose reaction he described as "not pleased." When asked what would have happened if he had not deserted the army in 1991, Mudric stated, in effect, he would have to kill or be killed. When asked what would happen if he were forced to return to Serbia, Mudric expressed a fear that he would be punished. Mudric did not specify exactly why and how he would be punished, but speculated that "what I'm, uh, hearing, what I'm seeing now it's Mafia, government, they, they punish a lot of people."

Although an index listing three witnesses prepared to testify at the hearing on Mudric's behalf had been filed by Mudric's attorney, two of those witnesses were not present at the proceedings. Those witnesses were Mudric's mother and a friend. At the beginning of the proceedings, the IJ indicated to counsel for Mudric that he believed their testimony would have little probative value because they were not experts and obviously partial to Mudric's claims. Additionally, he noted that competent evidence was already in the record as to the country conditions in Serbia. At the end of Mudric's testimony, the IJ concluded that Mudric's case was ripe for adjudication even without the testimony of witnesses. He stated that witnesses would have little to contribute to the case because "the facts [were] pretty clear." The IJ explained that he would not be granting Mudric's request for reasons set forth in a written decision. That decision reflected the IJ's belief that Mudric's testimony lacked credibility and was completely in conflict with the objective evidence in the record.

5

The IJ's decision was affirmed without opinion by the Board of Immigration Appeals ("BIA") on June 4, 2002, and Mudric was granted thirty days to depart voluntarily. Mudric failed to adhere to the BIA's order and was taken into custody by INS on July 16, 2002. Mudric retained new counsel and filed in this Court a petition for review of his order of removal. That petition was dismissed as untimely on April 9, 2003. While the untimely petition for review remained pending, Mudric filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 in the United States District Court for the Eastern District of Pennsylvania as well as a motion for an order to show cause and a motion for stay of removal. The District Court issued an order staying Mudric's removal and requiring his release from custody. However, without taking any substantive action on the § 2241 petition, the District Court converted and transferred it to this Court for treatment as a petition for review, as mandated by the REAL ID Act of 2005 ("REAL ID Act"), Pub.L. No. 109-13, 119 Stat. 231, Div. B, Title I, § 106(c) (May 11, 2005). *See Bonhometre v. Gonzales*, 414 F.3d 442, 445-46 (3d Cir. 2005).

## II.

The REAL ID Act confers on this Court jurisdiction to review constitutional claims and questions of law raised in a converted and transferred petition for review of an order of removal. 8 U.S.C. § 1252(a)(2)(D); *see Bonhometre*, 414 F.3d at 446. Although Mudric's habeas corpus petition has been converted to a petition for review, our standard of review remains the same. *Jordon v. Att'y Gen.*, 424 F.3d 320, 327-28 (3d Cir. 2005). We review de novo constitutional claims and

6

questions of law, including application of law to undisputed facts or adjudicated facts, raised in the initial petition for habeas corpus relief. *Kamara v. Att'y Gen.*, 420 F.3d 202, 211 (3d Cir. 2005). In a petition for review, we examine factual and discretionary determinations made by an IJ in adjudicating asylum requests under the familiar substantial evidence standard. *Dia v. Ashcroft*, 353 F.3d 228, 247-48 (3d Cir. 2003). That is, an IJ's decision to deny a request for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole . . . and can be reversed only if the evidence presented by [petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *see also Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir. 2001) ("The [IJ's] finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it.").

Normally, we have jurisdiction over an alien's claims only where the alien has raised and exhausted his or her administrative remedies as to that claim. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 594-95 (3d Cir. 2003). However, due process claims are generally exempt from the exhaustion requirement because the BIA does not have jurisdiction to adjudicate constitutional issues. *Sewak v. INS*, 900 F.2d 667, 670 (3d Cir. 1990). Thus we review de novo the question of whether Mudric's procedural due process rights have been violated. *Bonhometre*, 414 F.3d at 446.

III.

7

Turning to the merits of the petition, Mudric alleges that INS delays in the consideration and processing of his asylum claim and his mother's permanent resident alien application prevented him from receiving a grant of asylum and an adjustment to lawful status via his mother. He alleges that conditions in his native Serbia had changed in the approximately four years between the time when he first filed his application for asylum and the time when it was considered by INS. Had his asylum claim been considered before these unspecified changes, Mudric reasons, he would have been entitled to a grant of asylum. In a similar fashion, Mudric argues that his mother, Mudric-Meolic, was prevented from filing an alien relative petition on behalf of Mudric because of an INS delay of eight years in processing her petition to remove conditions on her permanent residence. Mudric suggests in the first instance that these INS delays in themselves worked a violation of due process and mandate the reopening of his removal proceedings. In addition, Mudric argues that the INS delays constitute affirmative government misconduct giving rise to a claim for equitable estoppel against the Government. These claims are entirely without merit.

Mudric fails to discern the discretionary nature of both asylum and adjustment of status determinations. While an alien may be eligible for a grant of asylum or an adjustment of status under the immigration laws, he is not entitled to such benefits as a constitutional matter. There is no constitutional right to asylum per se. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). An alien seeking admission to the United States through asylum "requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude

8

aliens is a sovereign prerogative." *Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996) (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)); *see also INS v. Yang*, 519 U.S. 26, 30 (1996) ("[T]he Attorney General's suspension of deportation . . . [is] 'an act of grace' which is accorded pursuant to her 'unfettered discretion.'") (citations omitted); *Ameeriar v. INS*, 438 F.2d 1028, 1030 (3d Cir. 1971) ("Adjustment of status is [] a matter of administrative grace, not mere statutory availability.").

Given the discretionary nature of immigration benefits, Mudric's INS delay-as-due process violation claim must fail at the threshold. It is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie. *See Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Furthermore, "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. Of course, "[p]roperty interests . . . are not created by the Constitution," *id.*, and the Supreme Court has recognized that constitutionally protected liberty or property interests may spring from positive rules of law, enacted by the state or federal government and creating a substantive entitlement in a particular government benefit. *See*, *e.g.*, *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463 (1976) ("[A] state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right.").

Nevertheless, the various discretionary privileges and benefits conferred on aliens by our federal immigration laws do

9

not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible. *See id.* ("A constitutional entitlement cannot be created . . . merely because a wholly and expressly discretionary state privilege has been granted generously in the past."); *INS v. Miranda*, 459 U.S. 14, 18 (1982) ("Both the number of applications received by the INS and the need to investigate their validity may make it difficult for the agency to process an application as promptly as desirable.").

In making a request for immigration benefits, "aliens only have those statutory rights granted by Congress," *Marincas*, 92 F.3d at 203, and no federal statute or regulation prescribes a hard-and-fast deadline for acting upon immigration applications and petitions, such as the ones in this case, submitted to the various agencies that administer our immigration laws. *See Cordoba v. McElroy*, 78 F. Supp. 2d 240, 244 (S.D.N.Y. 2000). No constitutional injury occurred from the INS delays in this case because Mudric simply had no due process entitlement to the wholly discretionary benefits of which he and his mother were allegedly deprived, much less a constitutional right to have them doled out as quickly as he desired.

Mudric's claim for equitable estoppel is also without merit. While we acknowledge that the doctrine of equitable estoppel can apply to the government in the immigration context, *see DiPeppe v. Quarantillo*, 337 F.3d 326, 335 (3d Cir. 2003), to prevail on such a claim, Mudric must establish (1) a misrepresentation; (2) upon which he reasonably relied; (3) to his detriment; and (4) affirmative misconduct. *Id.* In this case,

10

Mudric has alleged nothing more than an INS delay in the processing of his asylum claim and his mother's application to remove conditions on her residence.

While this delay may be unfortunate, even "unjustified" as Mudric alleges, mere delay does not constitute "affirmative misconduct" on the part of the Government. *See Miranda*, 459 U.S. at 19 ("Proof only that the Government failed to process promptly an application falls far short of establishing such conduct.").[4] Even assuming arguendo that the Government was negligent in not processing Mudric and his mother's immigration applications in a more expeditious fashion, such negligence would still not constitute affirmative misconduct. *See INS v. Hibi*, 414 U.S. 5, 8 (1973) ("As a general rule laches or neglect of duty on the part of the Government is no defense to a suit by it to enforce a public right or protect a public interest . . . ."). As Mudric has failed to present any evidence of affirmative misconduct on the part of the Government, his claim for equitable estoppel must fail.

Turning next to Mudric's ineffective assistance of counsel claim, we note at the outset that the BIA denied Mudric's motion to reopen in part because he failed to document compliance with the threshold requirements set forth in *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988), for bringing an

---

[4]It should be noted that in *Miranda*, one of the primary cases relied upon by Mudric in support of his equitable estoppel claim, the Court rejected a claim of affirmative misconduct involving the INS's "unreasonable delay" in processing a visa application. 459 U.S. 14.

ineffective assistance claim. We have "generally agree[d] that the BIA's three-prong test [set forth in *Lozada*] is not an abuse of the Board's wide ranging discretion." *Lu v. Ashcroft*, 259 F.3d 127, 133 (3d Cir. 2001). Pursuant to *Lu*, we will affirm the BIA's denial of the motion to reopen for failure to comply with the procedural requirements of *Lozada*.

Finally, Mudric challenges the IJ's denial of his asylum request, describing the IJ's decision as "arbitrary and capricious" and a "violation of due process." Draping his claims in the language of procedural due process, Mudric invites this Court to regard his asylum challenge as one of constitutional dimensions. Due process, however, only guarantees an alien in asylum proceedings the opportunity to be heard "at a meaningful time and in a meaningful manner." *Abdulai*, 239 F.3d at 549 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). More specifically, it entitled Mudric to (1) fact finding produced to the IJ or BIA and disclosed to him; (2) the ability to make arguments on his own behalf; and (3) an individualized determination of his interests. *Id.* The record reflects that the fact finding by the IJ in this case was disclosed to Mudric and that he had the opportunity to make arguments on his own behalf. In addition, the decision of the IJ in this case constituted an individualized determination. Due process requires no more. *See id.* at 550 ("[T]he question for due process purposes is not whether the [IJ] reached the correct decision; rather it is simply whether the [IJ] made an individualized determination of [the alien's] interest. . . .").

It is apparent that Mudric's denial of asylum claim, stripped of the trappings of due process, is in fact a challenge to

the factual and discretionary determinations made by the IJ in adjudicating the asylum claim. Normally, there would be no question that we have jurisdiction to review such a claim on direct petition for review under 8 U.S.C. § 1252. *See*, *e.g.*, *Gao v. Ashcroft*, 299 F.3d 266, 271-72 (3d Cir. 2002); *Dia*, 353 F.3d at 247. However, the jurisdictional analysis in this case is somewhat more complicated because of the case's atypical procedural posture.[5] The Government challenges our longstanding authority to review factual and discretionary determinations made by an IJ in relation to asylum claims. It argues the REAL ID Act and our holding in *Sukwanputra v. Gonzales*, 434 F.3d 627 (3d Cir. 2006), precludes us from exercising jurisdiction over any factual and discretionary determinations made in relation to asylum claims, whether the claims are presented pursuant to a direct petition for review or

---

[5]As previously noted, *supra* Part I, Mudric filed a petition for review that was dismissed by this Court as untimely. The petition for review now before us is a converted and transferred habeas petition restating the same claims asserted in the time-barred petition for review. Bearing in mind the judicial review amendments of the REAL ID Act were enacted "to streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review)," *Bonhometre*, 414 F.3d at 446, we look with disfavor on and do not condone what appears to be in this case an attempt to get more than "one bite at the apple." *Id.* Because of the finite number of cases transferred to us under the REAL ID Act, we do not consider whether this second Petition for Review is properly before us.

pursuant to transfer/conversion of a habeas petition. Such a claim is overly broad, as the following discussion makes clear.

In *Sukwanputra*, we examined 8 U.S.C. § 1158, which governs asylum requests, in light of jurisdictional modifications made by the REAL ID Act. The petitioner had failed to file a timely (within one year) petition for asylum. Under § 1158(a)(2)(D), a tardy application may only be considered if the alien demonstrates to the satisfaction of the Attorney General that an exception is warranted because of changed or extraordinary circumstances. The petitioner challenged the IJ's determination that he did not qualify for an exception to the one-year filing deadline. However, § 1158(a)(3) provides "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph § 1158(a)(2)."

In determining whether we had jurisdiction to consider the petitioner's challenge, we noted that the REAL ID Act, by adding 8 U.S.C. § 1252(a)(2)(D), had restored our jurisdiction to hear constitutional claims and questions of law in a criminal alien's petition for review, but that all other jurisdiction-stripping provisions of the INA remained intact, including § 1158(a)(3). Therefore, we concluded that "despite the changes of the REAL ID Act, 8 U.S.C. § 1158(a)(3) continues to divest the court of appeals of jurisdiction to review a decision regarding whether an alien established changed or extraordinary circumstances that would excuse his untimely filing." *Id.* at 635. *Sukwanputra* thus stands for the limited proposition that we continue to lack jurisdiction to review a purely factual determination made by the BIA that exceptional or changed circumstances do not exist under § 1158(a)(2)(D) to

14

justify waiving the § 1158(a)(2)(B) one year time limit for making asylum requests.[6]

Because Mudric's denial of asylum challenge is not a challenge to an exceptional or changed circumstances determination under § 1158(a)(2)(D), we retain jurisdiction to review it under 8 U.S.C. § 1252. *See*, *e.g.*, *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002); *Dia*, 353 F.3d at 247. Where the BIA summarily affirms the findings of the IJ, we review the IJ's decision directly. *Konan v. Att'y Gen.*, 432 F.3d 497, 500 (3d Cir. 2005). Applying the substantial evidence standard, we must uphold the IJ's determination that Mudric was not eligible for asylum if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Dia*, 353 F.3d at 248. When an IJ denies an asylum claim based in part on an adverse credibility determination, as the IJ did in Mudric's case, we review that determination to ensure that it "was appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence on country conditions." *Id.* at 249.

The IJ found that Mudric's testimony conflicted with the objective evidence on the record. Specifically, the IJ found

---

[6]It would be peculiar and entirely inconsistent for us to conclude that *Sukwanputra* stands for the proposition that we lack jurisdiction to review the adverse credibility determinations in the instant case, as in *Sukwanputra* itself we proceeded to review adverse credibility determinations made by the IJ for substantial evidence. 434 F.3d at 636-37.

Mudric's testimony that he was a "marked man" because of his past relationship with a Muslim woman lacked credibility as country reports relied on by the IJ indicated that consorting between different ethnic groups was quite common in the former Yugoslavia in the years before the civil war.[7]  In addition, the IJ found there was no credible basis for Mudric's assertions that he feared persecution for his alleged moral opposition to the civil war and serving in the military.  In support of this finding, the IJ cited Mudric's failure to seek an exemption from service based on his moral convictions, which was available when Mudric served in the military.  He also noted Mudric's failure to provide any evidence that he had previously ever expressed any sentiments against the war or serving in the military.

The IJ concluded that Mudric's fear of returning to Serbia arose from his desertion from the army.  In turn, the IJ found that the weight of the evidence suggested Mudric had deserted the army not because he was morally opposed to war, but rather to avoid danger to his life.  As support for this conclusion, the IJ pointed to the fact that Mudric had presented no evidence of any opposition to service in the military in the past or evidence

---

[7]In reciting the evidence supporting the IJ's decision, we find this particular detail troublesome.  As religious, as well as ethnic, hatred was at the center of the terrible civil conflict in the former Yugoslavia, the possibility of persecution based on an interfaith relationship before, during, and after the civil war should probably have been explored more extensively by the IJ.  Nevertheless, there is still enough support for the IJ's decision such that we could not reverse it under our limited standard of review.

that he expressed any substantial anti-war sentiments while in Serbia. Based on these adverse credibility determinations, the IJ concluded that Mudric had failed to demonstrate that he faced a reasonable possibility of persecution on account of his race, religion, nationality, membership in a political group, or political opinion if he was returned to Serbia and thus denied his asylum request.[8]

It is clear the IJ's adverse credibility determinations in this case were not "arbitrary and conjectural in nature," *Dia*, 353 F.3d at 250, but supported by "specific and cogent reason[s]." *Gao*, 299 F.3d at 275. They were based not on speculation, but on objective evidence in the record. Such findings are entitled to deference and as the IJ's decision in this case was supported by reasonable, substantial, and probative evidence on the record considered as a whole, we must uphold it.

For the foregoing reasons, the petition will be denied.

---

[8]Because Mudric failed to meet the eligibility requirements for asylum he could not meet the more stringent applicable standard for withholding of removal. *See Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991).

17