

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-19-2008

# Shah v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3089

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Shah v. Atty Gen USA" (2008). *2008 Decisions.* Paper 513.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/513

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**IMG-183**                                                                 **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3089
_____

AHMED ALI SHAH,

                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A79-730-960)
Immigration Judge:  Honorable Rosalind Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 18, 2008

Before: SLOVITER, STAPLETON and COWEN, Circuit Judges

(Opinion filed: September 19, 2008)
_____

OPINION
_____

PER CURIAM

        Petitioner Ahmad Ali Shah petitions for review of an order of the Board of

Immigration Appeals (BIA) denying his application for withholding of removal and

protection under the Convention Against Torture (CAT).[1]  For the reasons that follow, we will grant the petition for review.

Shah is an approximately forty-year old male, native and citizen of Pakistan, who alleges that he fears persecution and torture by a Taliban-affiliated militia named Tehrik-e-Nafaz-e-Shariat-e-Mohammadi (TNSM) if he is returned to Pakistan.  Shah first arrived in the United States on or about April 4, 1999.  Shah was placed into removal proceedings after the service of a Notice to Appear in February 2003, charging him as being removable pursuant to Immigration and Nationality Act § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i).  In July 2003, Shah filed an application for asylum, withholding from removal, and protection under the CAT.  Shah sought relief based on his religion, political opinion, and membership in a particular social group.[2]  The application identified Shah's social group as "a journalist, working for Likwal Magazine in Swat Northwest Frontier Province Pakistan . . . My reports were considered unfavorable to the Taliban and their supporters . . . ."  Appx. at 62.

Before the Immigration Judge, Shah affirmed that from 1995-1997 he worked as a journalist for Likwal, a magazine based in Mingora, Swat, an area located in the North

---

[1]  Shah concedes that this Court does not have jurisdiction to review the Immigration Judge's determination, which was affirmed by the Board of Immigration Appeals, that Shah's application was untimely filed and that Shah did not qualify for an exception to the one-year filing deadline.  See Sukwanputra v. Gonzales, 434 F.3d 627, 633-34 (3d Cir. 2006); Mudric v. Attorney General, 469 F.3d 94, 101 (3d Cir. 2006).

[2]  Shah's application identified him as a Muslim.

West Frontier of Pakistan bordering Afghanistan. Shah testified that his writings spoke out against the implementation of strict Islamic law (Sharia) in the region and against the TNSM's recruitment of young boys and men to fight alongside the Taliban in Afghanistan. Shah claimed that as a result of these activities, he was targeted by TNSM. Shah alleged that the militia attacked his home in 1996, including a guest house/home office. Shah said that during the attack they broke furniture, tore up papers, and "burned the place." Shah also received threats over the telephone. Shah filed a police report, but no action was taken against the militia. Shah also claimed that in 1997 the militia attacked the Likwal office in Mingora City. According to his asylum application, militia members shot their guns in the air, burned all the papers in the office, and beat Shah on the head, shoulders, and back with rifle butts. Shah escaped to Karachi, but testified that he continued to be pursued by militia members and was forced to move from one hiding place to another.

Shah traveled to the United States in 1999. He testified that after his arrival, his health began to deteriorate. Shah lost weight, began to suffer from chest pain, and was prescribed Zoloft for anxiety. Shah also testified that after his departure from Pakistan, country conditions worsened because religious leaders gained power in 2000 and the TNSM organizations became more powerful. Shah contends that people are still coming to his former home in Pakistan asking about his whereabouts.

The Immigration Judge denied Shah's application for asylum, withholding from

removal and protection under the CAT. The IJ concluded that he was ineligible for asylum because he did not apply for asylum until four years after he arrived in the United States. She further concluded that he had not demonstrated exceptional circumstances justifying this delay because, although Shah contended he suffered from anxiety, he had been able to find and maintain employment immediately after his arrival in the United States.

The IJ denied Shah's application for withholding of removal and relief under the CAT based on an adverse credibility determination. The IJ identified several problems with Shah's testimony. First, the IJ concluded that Shah had testified credibly when he said that he was a "local reporter with some affiliation to [the Likwal] magazine," but that there was "no evidence that the respondent wrote an article criticizing the TNSM" because Shah failed to submit a single article he had written. Appx. at 22-23.

Second, the IJ found that Shah had testified inconsistently with a First Information Report from the Kabal district police station in Swat. According to the IJ, Shah testified that his house was attacked and burned in 1997, but the First Information Report was dated January 27, 1996, and Shah could not explain why the report was dated before the incident occurred. In addition, the First Information Report indicated that Shah was present at the time of the attack on his "office,"[3] that TNSM members opened fire on him

---

[3] Shah testified that the reference to an "office" was the guesthouse part of his home that was also used as an office.

4

with dangerous arms, but that he escaped.  However, Shah testified that he was not present when the TNSM raided his house.  Accordingly, the IJ rejected Shah's testimony that his home and office were burned as the result of his work for the Likwal magazine.

Third, the IJ concluded that an adverse credibility determination was warranted because none of the doctors in the medical records he submitted "refer to the problems of the respondent in Pakistan as being the source of his anxiety." Appx. at 25.  The IJ found that the lack of a demonstrable connection between Shah's anxiety and his experiences in Pakistan, coupled with the inconsistencies between his testimony and the documents he submitted, undermined Shah's credibility "regarding his opposition to the TNSM and his writings attacking or demonstrating his opposition to their goals."  Id.

Fourth, the IJ rejected Shah's testimony that men with long beards appeared looking for him in Karachi after he moved, and that he was forced to move from location to location.  The IJ found that the I-589 form indicated that he resided in one location only.

Based on the foregoing, the IJ found that even if the asylum application had been timely filed, the IJ would have found Shah ineligible for asylum because the respondent had failed to meet his burden of establishing past and future persecution.  The IJ further concluded that Shah had failed to establish that there was a clear probability that he would be persecuted upon returning to Pakistan or that he would be subject to torture for any reason upon returning to Pakistan.  Accordingly, the IJ denied the application for

5

withholding of removal and relief under the CAT. The IJ did, however, grant Shah voluntary departure.

The BIA adopted and affirmed the IJ's decision, concluding that, "The Immigration Judge's findings that the respondent is statutorily ineligible for asylum and otherwise failed to provide credible testimony and evidence to meet his burden to establish his eligibility for asylum, withholding of removal, and [CAT] protection from Pakistan are supported by the record." Shah then filed a timely petition for review.

As noted above, this Court does not have jurisdiction to review the IJ's determination, which was affirmed by the BIA, that Shah's asylum application was untimely filed, and that Shah did not qualify for an exception to the one-year filing deadline. See Sukwanputra, 434 F.3d at 633-34; Mudric, 469 F.3d at 101. Nonetheless, this Court retains jurisdiction to review the denial of withholding of removal and relief under the CAT. Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003). Where, as here, the BIA "directs us to the opinion and decision of the IJ who originally assessed [the] application, we review the IJ's opinion." Shah v. Attorney General of the United States, 446 F.3d 429, 434 (3d Cir. 2006) (quotation omitted).

Whereas asylum is discretionary, withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), is mandatory if the applicant meets a more stringent standard – that it is "more likely than not" that he or she will be persecuted on account of race, religion, nationality, membership in a particular social group, or political

6

opinion if deported to his or her home country.  Lukwago v. INS, 329 F.3d 157, 182 (3d Cir. 2003).  To obtain relief under the CAT, an applicant must establish that it is more likely than not that he would be tortured if removed to the proposed country of removal. Toure v. Attorney General of the United States, 443 F.3d 310, 317 (3d Cir. 2006).

An IJ's adverse credibility determination is reviewed for substantial evidence.  See Berishaj v. Ashcroft, 378 F.3d 314, 322-23 (3d Cir. 2004).  Adverse credibility determinations based on speculation or conjecture are not upheld.  See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).  Under this standard, this Court upholds an adverse credibility determination unless "any reasonable adjudicator would be compelled to conclude to the contrary."  Id.  In general, "minor inconsistencies and minor admissions that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding."  Id. (quotation omitted).  Any discrepancies must involve the heart of the asylum claim.  Id.[4]

Although the substantial evidence standard grants significant deference to the adverse credibility determination of the IJ, we conclude that there are a sufficient number of problems with the IJ's determination in this case to warrant granting Shah's petition for review.  See id.  In the first instance, the IJ is incorrect that Shah testified that the attack

---

[4]  The provisions of the Real ID Act of 2005 concerning the Court's review of an adverse credibility finding do not apply in this case because Shah applied for relief before the Act's effective date.  See Kaita v. Attorney General of the United States, 522 F.3d 288, 296 (3d Cir. 2008).

on his home occurred in 1997, but that the police report indicated it occurred in 1996.  In fact, Shah testified that his house was attacked in 1996 and the <u>Likwal</u> press office was attacked in 1997.  Appx. at 314, 316, 341, 343.  The IJ's misunderstanding may have arisen because, on cross-examination, the attorney for DHS incorrectly stated that a police report had been filed in 1997, and Shah did not correct him.  Appx. at 341-342.

Additionally, the IJ concluded that Shah was not credible because he failed to provide a single copy of an article criticizing the TNSM that he himself had written.  As this Court explained in <u>Abdulai v. Ashcroft</u>, 239 F.3d 542, 554 (3d Cir. 2001), otherwise-credible applicants may sometimes be required to supply corroborating evidence in order to meet their burden of proof.  This contemplates a three–part inquiry: (1) identification of the facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so."  <u>Id.</u> (quotation omitted).  Here, the IJ failed to engage in the three-part analysis contemplated in <u>Abdulai</u>.  The IJ stated that she found it "curious" that Shah did not submit a single article written by him even though he has "based his entire claim on the fact that he wrote articles in April of 1995 which [created] his problems."  Appx. at 22.  The IJ went on to state that, "while the Court can find the respondent testified credibly when he says that he was a local reporter with some affiliation to this magazine,

8

the Court has no evidence that the respondent wrote an article criticizing the TNSM."[5]

Appx. at 22-23. However, the IJ's opinion does not reflect whether she evaluated Shah's explanation that his documents were burned in an attack, and provides no analysis of other evidence Shah offered to corroborate his claims.[6]

Specifically, the IJ did not address two letters from government officials that Shah submitted in support of his claim. One of these two letters affirms that Shah openly criticized the TNSM. The other letter states that Shah published a report about a religious organization and therefore some members of this organization wanted to kill him. Because this evidence was potentially corroborative of Shah's claims, it should have been considered and evaluated before his application for withholding of removal and protection under the CAT was denied. Cf. Gao, 299 F.3d at 277 ("Because of the high probative value of this evidence, which supports Gao's consistent testimony, reconciles ambiguities and conflicts with the suspect report cards, we conclude that it was reversible

---

[5] Notably, the IJ stated at the conclusion of the hearing that she had "no doubt that [Shah's] written an article against [the militia group]." Appx. at 369. The IJ followed this observation by saying she had not yet formed a final decision, but it is unclear why the IJ apparently later changed her mind about whether Shah had written an article critical of the TNSM.

[6] The respondent is incorrect that Shah contends that he was not able to provide copies of his articles because they were burned during the attacks for the first time on appeal. The respondent is correct, however, that Shah did not raise a claim based on the cold courtroom conditions before the BIA. We will not address this unexhausted claim.

9

error for the IJ to fail to evaluate and discuss it.").[7]

Further, although we agree with the IJ that Shah did not satisfactorily explain why he testified that he was not at home during the attack on his house – whereas the First Information Report appears to suggest that he was at home and escaped – we are troubled by the fact that the IJ placed such emphasis on the First Information Report in making her credibility determination. Although the IJ concluded that this unauthenticated document should not be given "much weight," she based a central part of her adverse credibility finding on this report. Cf. Shah, 446 F.3d at 436 (observing that the IJ "should not have invoked evidence he excluded to undermine [the petitioner's] claims").

Moreover, the IJ's conclusion that Shah did not testify credibly about being forced to move around Karachi because TNSM members appeared there looking for him is not supported by substantial evidence. The IJ rejected this testimony because this information had not been brought to the court's attention earlier, and because, according to the IJ, Shah's I-589 form indicated that he had resided in one location in Karachi only. However, as Shah plausibly explained during the hearing, he lived in different places within the Kemari area. This testimony was consistent with his I-589 Form which indicated that he lived in the "Kemari Area" of Karachi from 1997-1999.

Finally, the IJ's conclusion that an adverse credibility determination was supported

---

[7] We express no opinion regarding the credibility of these two documents and leave this determination to the fact finder on remand. See Gao, 299 F.3d at 277.

10

by the absence of explicit references in Shah's medical records to his experiences in Pakistan is not supported by substantial evidence. The IJ observed that "[n]one of the doctors refer to the problems of the respondent in Pakistan as being the source of his anxiety. If in fact the respondent was feeling anxious on account of death threats he had received in Pakistan, one would think that this would have been mentioned to the doctors when they were examining him . . . while there are medical records reflecting that the respondent is suffering from anxiety, there are no medical records which link his mental state to anything that happened to him in Pakistan." Appx. at 25. After making this observation, the IJ went on to re-affirm her adverse credibility determination, stating that "[w]hen one couples that with the documents that respondent submitted which contradict his testimony or which are inconsistent with his testimony, the Court cannot find that the respondent has testified credibly regarding his opposition to the TNSM and his writings attacking or demonstrating his opposition to their goals." Id. It is unclear to us why the absence of any medical records explicitly linking his depression and anxiety to his experiences in Pakistan undermines Shah's credibility regarding his opposition to the TNSM or the existence of writings demonstrating his opposition to the TNSM. Furthermore, as the IJ herself observed, the root of his anxiety or panic attacks is "not clear" from the medical records. Id. Thus, we conclude that it was impermissible speculation to infer that his medical records belied Shah's credibility regarding his opposition to the TNSM.

11

For the foregoing reasons, we will grant the petition for review, and remand for further proceedings (including any necessary fact-finding) consistent with this opinion.