NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2270
_____

PURANDHAR DHITAL; SHANTI DHITAL;
ASMITA DHITAL; AYUSH DHITAL,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of Order of the Board of Immigration Appeals
(Agency Nos. A098 903 113, A098 903 114, A098 903 115 & A098 903 116)
Immigration Judge:  Hon. Rosalind K. Malloy
_____

Submitted Under Third Circuit L.A.R. 34.1(a),
January 25, 2011

BEFORE:  FUENTES, CHAGARES, Circuit Judges, and POLLAK, District Judge[*]

(Opinion Filed: April 05, 2011)
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge.

Petitioners, Purandhar Dhital ("Dhital"), his wife Shanti Dhital, and their two

children, Asmita Dhital and Ayush Dhital, seek review of a Bureau of Immigration

_____

[*] Honorable Louis H. Pollak, Judge of the United States District Court for the Eastern
District of Pennsylvania, sitting by designation.

1

Appeals ("BIA") order affirming the immigration judge's ("IJ") ruling that they are not entitled to asylum, withholding of removal, or protection under the Convention Against Torture ("CAT"). We deny their petitions, for the reasons set forth below.

I.

Because we write for the parties, we discuss the facts only to the extent necessary for resolution of the issues raised on appeal. Dhital entered the United States from his native country of Nepal sometime around September 1, 1997 on a student visa. His family followed shortly after. Ultimately, the Dhitals' visas were set to expire on December 18, 2004. They filed petitions for asylum, withholding of removal and protection under the CAT on January 18, 2005. Hearings on their petitions were conducted on September 14, 2006 and November 28, 2008.

Dhital testified that he was afraid to return to Nepal for several reasons. First, he testified that ongoing conflict between Maoist guerillas and the Nepalese government makes Nepal a violent and unstable place to live. Second, in November 2004, Dhital's brother—who lives in Nepal—received a letter, addressed to Dhital, threatening violence against Dhital unless he gave a Maoist leader 25 lakhs, which is equal to approximately $34,000. Third, Dhital testified that the Maoists might be targeting him because of his past membership in the United Marxist Leninists ("UML")—an organization promoting, among other things, democracy, women's rights and social services—or because of his past membership in Nepal's University Teacher's Association ("NUTA"). He also stated that university-educated friends and colleagues associated with the West had been harmed upon their return to Nepal.

2

The IJ recognized that the Maoists are a violent terrorist organization that has created strife for the Nepalese government and its citizens. Nevertheless, the IJ concluded that Dhital was not eligible for relief because (1) there was no evidence that Maoists had persecuted Dhital in the past; (2) there was no evidence that Maoists were targeting the "western educated," only evidence that they had targeted individuals with wealth; (3) there was no evidence that Dhital was targeted because of his membership, over a decade ago, in the UML or the NUTA; (4) the extortion letter Dhital's brother received was sent seven years after Dhital left Nepal—just a few months before he applied to remain in the United States—even though the Maoists were active in Nepal before 1997; (5) there was no follow-up or harm as a result of the failure to comply with the extortion letter; and (6) Dhital's oldest son returned to Nepal in March 2004 and, just like Dhital's brother, has not been harmed.

The IJ also found that Dhital's testimony about the extortion letter was not entirely credible because of variations in the story about the extortion letter, its timing, and the fact that the authors of the letter never followed through on their promise to demand more money if the initial amount was not paid. According to the IJ, Dhital's fears of persecution were purely speculative.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a). To qualify for asylum, the petitioners must show that they are "unable or unwilling to return to [Nepal] . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. §

3

1101(a)(42); *see also* 8 U.S.C. § 1158(b)(1)(A). A petitioner's failure to demonstrate eligibility for asylum necessarily means that he failed to meet the higher burden of proof for statutory withholding of removal. *See Mudric v. Attorney General*, 469 F.3d 94, 102 n.8 (3d Cir. 2006). For relief under the CAT, the petitioners must demonstrate that it is more likely than not that they would be tortured if removed to Nepal. *See* 8 C.F.R. § 208.16(c)(2); *see also Pierre v. Attorney General*, 528 F.3d 180, 186, 189 (3d Cir. 2008) (en banc).

Because the BIA's original final order of removal summarily affirmed the IJ, we review the IJ's decision directly. *Mudric*, 469 F.3d at 101. Our review of the IJ's decision is for substantial evidence, considering whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Lin-Zheng v. Attorney General*, 557 F.3d 147, 155 (3d Cir. 2009) (en banc) (internal citation omitted). Adverse credibility determinations are reviewed under the same standard, and must be upheld "unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

### III.

Dhital argues that the IJ's ruling is not supported by reasonable, substantial and probative evidence. We disagree. Dhital's generalized fears of violence in Nepal are not enough to obtain asylum. *See Al-Fara v. Gonzales*, 404 F.3d 733, 740 (3d Cir. 2005) (recognizing that "harm resulting from country-wide civil strife is not persecution on 'account of' any enumerated statutory factor"). Nor is his speculation that he might be targeted because of his education and stay in the United States. The IJ concluded that the

4

evidence demonstrated, at most, that Maoists are targeting people of means, not the "western educated." The wealthy are not a protected class. Neither are the "western educated." And even if the western educated are a protected class, the IJ's conclusion that Dhital was not targeted because of his membership in such a class is supported by substantial evidence. (*See, e.g.,* Admin. Rec. at 161 (Dhital referring to attack on student as "crookery") and 192 (Dhital admitting that he ignored the extortion letter at first because "there may be some crooks in the community . . .")).

The IJ's conclusion that Dhital does not have a well-founded fear of future persecution also finds substantial support in the evidence. Dhital's son returned to Nepal without suffering harm, no harm has come to pass as a result of the extortion letter, and Dhital's brother has not been the target of violence. *See Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) ("[W]hen family members remain in [the] petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished."). Moreover, we cannot conclude that "any reasonable adjudicator" would be compelled to find Dhital's extortion-letter-related testimony to be credible. The IJ found that it was not credible and we uphold that determination.

Dhital's contention that he is entitled to relief under the CAT fares no better.[1] There is no evidence that Dhital has been tortured or would be tortured upon his return. The extortion letter does not threaten torture. Dhital speculated that he might be subject

---

[1] The government argues that Dhital waived this issue by not presenting it to the BIA. We conclude that he did. (Admin. Rec. at 37 (noting that Dhital sought relief under the CAT)).

to generalized violence upon his return to Nepal. But this, too, does not constitute torture. And even if it did, the CAT requires that the torture be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). There is no evidence that public officials might torture Dhital. In short, we find no reason to disturb the IJ's ruling on Dhital's CAT claim.

## IV.

The IJ's conclusion is supported by substantial evidence. For the foregoing reasons, we deny the petitions for review.