NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2528
_____

BRODELID BRAVO CASTRO;
AHILUD BRAVO CASTRO,

                              Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

                              Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A99-437-916 and BIA 1:A99-437-920)
Immigration Judge: Honorable Frederic G. Leeds
_____

Submitted Under Third Circuit LAR 34.1(a)
September 15, 2011

Before:   RENDELL, BARRY and JORDAN, *Circuit Judges*.

(Filed: September 19, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Ahilud and Brodelid Bravo Castro (collectively "Petitioners"), are brothers who seek review of an April 28, 2010 decision by the Board of Immigration Appeals ("BIA") that affirmed the decision of an Immigration Judge ("IJ") ordering them removed to Mexico. [1] As to Ahilud, the BIA's decision rested on its conclusions that it lacked jurisdiction to consider his equitable estoppel claim and that, even if it had such jurisdiction, he had failed to establish the required elements of that claim. As to Brodelid, the BIA determined that, though he had sought cancellation of removal under the Immigration Nationality Act ("INA") § 240A(b), 8 U.S.C. § 1229b(b), he had not established "exceptional and extremely unusual hardship." (App. at 4.) For the reasons that follow, we will deny the petition as to Ahilud and dismiss it as to Brodelid.

## I. Background

Petitioners are natives of Mexico. On August 20, 2007, their father was granted cancellation of removal pursuant to the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, 111 Stat. 2160 (1997), and became a lawful permanent resident ("LPR"). Petitioners would have been derivative beneficiaries of their father's application for cancellation of removal, but the each turned twenty-one years old before their father was granted LPR status, which disqualified them for relief as derivative beneficiaries. *See* 8 C.F.R. § 1240.61(a)(4) (allowing for derivative

---

[1] Ahilud and Brodelid's cases were consolidated before the Immigration Judge. A third brother's case was also joined at that time. That brother did not appeal to the BIA with Ahilud and Bordelid but instead filed a separate Notice of Appeal to the BIA. Thus, the BIA severed that brother's case from Ahilud and Brodelid's.

applications for a "child") and 8 U.S.C. § 1101(b)(1) (defining the term "child" as "an unmarried person under twenty-one years of age"). Of particular significance here, Ahilud turned twenty-one, and hence "aged out" of eligibility as a derivative beneficiary, just one day before his father became an LPR. On August 30, 2007, Petitioners were issued a Notice to Appear charging them as removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as aliens present in the United States without being admitted or paroled. They were subsequently placed in removal proceedings.

Through counsel, Ahilud conceded removability. Because he could no longer qualify as a derivative beneficiary of his father's NACARA application and had not been physically present in the United States long enough to qualify for cancellation of removal under INA § 240A(b), 8 U.S.C. § 1229b(b), Ahilud sought equitable estoppel against the government, asserting that he had been misled by the government into believing that he would succeed in his derivative application when his father's application for relief under NACARA was granted. Ahilud claimed that his case met the requirements of an equitable estoppel claim[2] for the following reasons: the government had misrepresented that his application would be approved when his father's application was approved; he had relied on that misrepresentation to his detriment; and the government committed affirmative misconduct by scheduling his father's final interview after his twenty-first birthday.

---

[2] To prevail on an equitable estoppel claim, an alien "must establish (1) a misrepresentation; (2) upon which he reasonably relied; (3) to his detriment; and (4) affirmative misconduct." *Mudric v. Att'y Gen. of the U.S.*, 469 F.3d 94, 99 (3d Cir. 2006).

Brodelid, unlike his younger brother Ahilud, was eligible for cancellation of removal under INA § 240A(b), and he applied for it. Brodelid had continuously been in the United States for the required 10 years, was not a criminal, and had two qualifying relatives, his daughter, who is a U.S. citizen, and his father. *See* 8 U.S.C. § 1229b(b)(1)(A)-(C). To be successful, however, he needed to establish that one of his two qualifying relatives would suffer "exceptional and extremely unusual hardship" upon his removal. 8 U.S.C. § 1229b(b)(1)(D). Brodelid claimed that his father would suffer such hardship, and he testified before the IJ in support of that claim, detailing his father's medical condition and need for financial support.[3]

The IJ found Petitioners removable. With remarkable understatement, the IJ noted that Ahilud's is an "unfortunate" case (App. at 147) and that, under the BIA's decisional law, there is no agency jurisdiction allowing the grant of equitable relief. The IJ further stated that, even if he were permitted to consider the equitable estoppel claim, Ahilud would still be unlikely to gain relief because "mere negligence [on behalf of the government] does not seem to be enough" to establish an equitable estoppel claim. (App. at 148.)

Turning to Brodelid, the IJ held a merits hearing on that brother's application for cancellation of removal. Following the hearing, the IJ denied the application, deciding

---

[3] Brodelid testified that his father is a recovering alcoholic, who injured his back and shoulder in 1994. He also submitted documentation to support that testimony. Brodelid testified and provided other evidence that his annual income was $30,000 while his father's was $12,000. Brodelid claimed that he has provided his father with financial assistance, and he added that he would not make enough money in Mexico to continue supporting his father.

that the father was, based on his yearly salary and monthly rent, self-sufficient. The IJ ordered both Ahilud and Brodelid removed to Mexico.

They then appealed to the BIA,[4] which dismissed their appeal. It affirmed the IJ's decision denying Brodelid's cancellation of removal application because it found that his father was not solely dependent upon Brodelid for monetary and non-monetary support and thus the alleged "hardship" fell short of the "exceptional and extremely unusual standard" set forth in the statute. (App. at 4.) The BIA also said that, as the IJ had observed, it lacked jurisdiction over Ahilud's equitable estoppel claim. Nevertheless, it addressed that claim by saying that Third Circuit precedent compelled the conclusion that Ahilud could not prevail because he could not establish that the government had, in scheduling his father's final NACARA interview the day following Ahilud's twenty-first birthday, engaged in "*affirmative misconduct*," which is one of four requirements for a finding of equitable estoppel.[5] (App. at 5) (citing *Mudric v. Att'y Gen. of the U.S.*, 469 F.3d 94, 99 (3d Cir. 2006)) (emphasis original).

This timely petition for review followed.

---

[4] On June 19, 2009, the BIA remanded the case for a complete oral decision and order that would encompass the disposition of all of the claims brought by the two brothers. On remand, the IJ issued a brief written opinion clarifying the status of his prior oral decisions and orders. The IJ explained that he had issued two oral decisions and that both removal orders were issued on December 29, 2008. Subsequently, the IJ returned the case to the BIA.

[5] The BIA also rejected Petitioners' claim that the IJ had erred in consolidating their cases because it found that an IJ can consolidate the cases of different respondents to "promote administrative efficiency" and because Petitioners' counsel had suggested consolidation. (App. at 4.) Petitioners do not challenge that decision and therefore we will not address it.

## II. Discussion[6]

When, as in this case, "the BIA issues a separate opinion … we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA defers to it." *Huang v. Att'y Gen. of the U.S.*, 620 F.3d 372, 379 (3d Cir. 2010); *Sandie v. Att'y Gen. of the U.S.*, 562 F.3d 246, 250 (3d Cir. 2009) (where the BIA's decision affirms and specifically references the IJ's decision, we also review the referenced portions of the IJ's decision); *Lin v. Att'y Gen. of the U.S.*, 543 F.3d 114, 119 (3d Cir. 2008) (same). We review factual findings for substantial evidence and treat them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We give *de novo* review to constitutional claims and questions of law, subject to the principles of deference established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

### A.    *Ahilud*

Ahilud argues that both the IJ and BIA erred in declining to apply the doctrine of equitable estoppel, and he asserts that the government's scheduling of his father's final NACARA interview the day after his twenty-first birthday amounted to affirmative misconduct. Assuming immigration officials were free to consider equitable estoppel, however, Ahilud cannot succeed on this record.[7]

---

[6] Pursuant to 8 U.S.C. § 1252(a), we have jurisdiction to review a final decision of the BIA. *See Abdulai v. Ashcroft*, 239 F.3d 542, 548-49 (3d Cir. 2001) (concluding that the decision of the BIA is a "final order" triggering our jurisdiction).

[7] The BIA's decision in *Hernandez-Puente*, 20 I&N Dec. 335, 339 (BIA 1991), supports the position that neither the BIA nor the IJ could have applied the doctrine of

6

As noted earlier, *supra* n. 2, an alien seeking to prevail on an equitable estoppel claim "must establish (1) a misrepresentation; (2) upon which he reasonably relied; (3) to his detriment; and (4) affirmative misconduct." *Mudric*, 469 F.3d at 99. Importantly, "mere delay does not constitute 'affirmative misconduct' on the part of the Government." *Id.* Ahilud has not presented evidence that the alleged delay in processing his father's application was the product of affirmative misconduct. As Ahilud himself describes it, the conduct of immigration officials in his case was "irresponsible" and constituted "negligence." (Petitioners' Br. at 14.) Despite the terrible consequence for Ahilud, there is no foundation for believing that anything more than garden variety incompetence led to the timing of the grant of LPR status to his father. Thus, although we truly sympathize with Ahilud, he has failed to establish an equitable estoppel claim, and the BIA did not err in declining to grant him relief.[8]

---

equitable estoppel. Rather than address that jurisdictional point, we look to the merits of the equitable estoppel argument because, as both the IJ and BIA observed, Ahilud would lose that argument even if the doctrine could be applied.

[8] We note that, while we lack the ability to grant Ahilud relief, the government has recently and very publically declared that it retains "prosecutorial discretion to ensure that the agency's immigration enforcement resources are focused on the agency's … priorities," which includes "settling or dismissing … proceeding[s]." Memorandum from John Morton, Director of U.S. Customs and Immigration Enforcement to All Field Office Directors, Special Agents in Charge, and Chief Counsel, "Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens. (June 17, 2011). Here, Ahilud had nearly completed the NACARA application process and, but for the government's scheduling of his father's final interview for the day after his twenty-first birthday, presumably would have been granted LPR status. There is no hint in the record that Ahilud would not have received that relief. He appears to be the hapless victim of a bureaucratic blunder, and the consequence he has suffered is severe.

### B. *Brodelid*

Brodelid argues that the BIA erred in finding that his father will not suffer "exceptional and extremely unusual hardship" if Brodelid is removed to Mexico. Brodelid thus contends that he should have been found eligible for cancellation of removal pursuant to INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1).

However, the plain language of 8 U.S.C. § 1252(a)(2)(B) prevents us from exercising jurisdiction "to review any judgment regarding the granting of relief under section … 1229b … of this title." That prohibition includes challenges to agency determinations of what constitutes "exceptional and extremely unusual hardship," because they are "quarrels over the exercise of discretion and the correctness of factual findings." *Patel v. Att'y Gen. of the U.S.*, 619 F.3d 230, 232-33 (3d Cir. 2010) (internal quotation marks omitted). Therefore, because Brodelid's argument attacks a wholly discretionary determination of the BIA and not a constitutional claim or a question of law, we lack jurisdiction to review it.

### IV. Conclusion

For the foregoing reasons, we will deny the petition for review as it pertains to Ahilud and dismiss it as it pertains to Brodelid.