**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-3623 & 10-4310
_____

ALPHA MOHAMMED JALLOH,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A98 244 116)
Immigration Judge:  Honorable Mirlande Tadal
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 4, 2011

Before:  RENDELL JORDAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed: May 13, 2011)
_____

OPINION
_____

PER CURIAM

On March 18, 2009, Alpha M. Jalloh, a citizen of Guinea, arrived in the United

States without a visa, a valid passport, or any form of identification.  The Department of

Homeland Security charged him with removability pursuant to Immigration and Nationality Act ("INA") §§ 212(a)(6)(C)(i) & 212(a)(7)(A)(i)(I) [8 U.S.C. §§ 1182(a)(6)(C)(i) & 1182(a)(7)(A)(i)(I)]. Jalloh conceded the charges and subsequently applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Jalloh appeared before an Immigration Judge ("IJ") and testified that his father was a member of the Guinean military and that he grew up in a military camp. After his father died, Jalloh took up residence with another man in the camp, identified as "Lieutenant Barry." Lieutenant Barry put Jalloh in charge of household duties. According to Jalloh, when he did not perform those duties adequately, Lieutenant Barry would physically abuse him. The incident which sparked Jalloh's departure, however, occurred when he observed members of the military mistreating individuals associated with the prior regime. Upon witnessing the abuse, Jalloh made a disparaging comment about Lieutenant Barry and the military, without realizing that Lieutenant Barry was within earshot. When he discovered that Lieutenant Barry had heard the comment, Jalloh fled the camp. A friend told Jalloh that the military was searching for him. Jalloh went to another town, took up residence with a friend, and eventually fled to Holland using a fraudulent passport. After a month in Holland, Jalloh traveled to the United States.

The IJ, assuming that Jalloh's testimony was credible, found that he did not demonstrate that he had suffered past persecution or that he had a well-founded fear of

future persecution on account of a protected ground. Jalloh appealed to the Board of Immigration Appeals ("BIA"). The BIA agreed that there was not a sufficient nexus between the physical mistreatment that Jalloh suffered and a statutorily protected ground, and that Jalloh's comment concerning the mistreatment of members of the prior regime was not sufficient to establish a well-founded fear of future persecution. The Board also agreed that Jalloh did not qualify for protection under the CAT. Jalloh filed a timely petition for review. (C.A. No. 09-3623).

While that petition was pending, Jalloh filed a motion to reopen and reconsider with the BIA. Jalloh relied on an affidavit from a friend indicating that the Guinean military is searching for him, several news articles, and the 2009 State Department County Report on Human Rights Practices for Guinea. The BIA denied the motions, holding that they were untimely. To the extent that Jalloh sought reconsideration, the BIA held that he had not identified an error of fact or law in the prior decision what would alter the outcome. 8 C.F.R. § 1003.2(b). The Board further concluded that Jalloh's evidence was insufficient to establish a change in country conditions so as to create an exception to the time limitation for filing a motion to reopen. 8 C.F.R. § 1003.2(c)(3). According to the BIA, Jalloh failed to demonstrate that the information in his friend's affidavit was not available and could not have been discovered or presented at the previous hearing. Id. Regardless of whether country conditions had changed, however, the BIA held that Jalloh had not presented a prima facie case that he is

eligible for relief. Jalloh filed a second petition for review. (C.A. No. 10-4310). The Clerk consolidated the petitions for disposition.

We have jurisdiction under INA § 242 [8 U.S.C. § 1252]. To qualify for asylum, Jalloh must show either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 101(a)(42)(A) [8 U.S.C. § 1101(a)(42)(A) ]. An alien's failure to demonstrate eligibility for asylum necessarily means that he failed to meet the higher burden of proof for statutory withholding of removal. See Mudric v. Att'y Gen., 469 F.3d 94, 102 n. 8 (3d Cir.2006). For relief under the CAT, Jalloh must demonstrate that it is more likely than not that he would be tortured if removed to Guinea. See 8 C.F.R. § 208.16(c)(2); see also Pierre v. Att'y Gen., 528 F.3d 180, 186, 189 (3d Cir. 2008) (en banc).

Because the BIA's original final order of removal both adopted the findings of the IJ and discussed some of the bases for the IJ's decision, we review the decisions of both the IJ and the BIA. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Our review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Lin-Zheng v. Att'y Gen., 557 F.3d 147, 155 (3d Cir. 2009) (en banc) (internal citation omitted). We review the denial of the motion to reopen and reconsider for abuse of discretion. See Borges v. Gonzales, 402 F.3d 398, 404 (3d Cir. 2005). Under this

4

standard, we may reverse the BIA's decision only if it is "arbitrary, irrational, or contrary to law." Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004).

We conclude that substantial evidence supports the BIA's holding that Jalloh is ineligible for asylum or withholding of removal. Jalloh emphasizes that he was "treated as a slave" by a "government official" while on a "governmental army base." Importantly, however, there is no evidence that the abuse occurred on account of a protected ground. Ndayshimiye v. Att'y Gen., 557 F.3d 124, 129 (3d Cir. 2009) ("[A] key task for any asylum applicant is to show a sufficient 'nexus' between persecution and one of the listed protected grounds."). Indeed, the record confirms that the abuse, while severe, was a result of Lieutenant Barry's displeasure with Jalloh's performance of domestic chores. See Klawitter v. INS, 970 F.2d 149, 152 (6th Cir. 1992) ("However distasteful his apparent treatment of the respondent may have been, such harm or threats arising from a personal dispute of this nature, even one taking place with an individual in a high governmental position, is not a ground for asylum."). For example, in his asylum statement, Jalloh indicated that "Lieutenant Barry took me to assist him in pressing his clothing, shining his shoes[,] and doing whatever he needed. One day I was late and as punishment he tied my hands and feet together and left me that way for the entire night." Furthermore, Jalloh responded in the affirmative when asked on cross-examination, "The times that Lieutenant Barry beat you was because he was not satisfied with how you were taking care of his clothing or uniforms, that kind of thing?" Thus, because the harm that

5

Jalloh suffered arose solely from a personal dispute, we must affirm the conclusion that he did not suffer past persecution. Amanfi v. Ashcroft, 328 F.3d 719, 727 (3d Cir. 2003) (holding that "retaliation in response to a personal dispute" does not constitute persecution).

Further, substantial evidence supports the conclusion that Jalloh failed to establish a well-founded fear of future persecution. To demonstrate that he has a well-founded fear of persecution, an applicant must satisfy three requirements: (1) he or she has a fear of persecution in his or her native country; (2) there is a reasonable likelihood that he or she will be persecuted upon return to that country; and (3) the applicant is unable or unwilling to return to that country as a result of his or her fear. 8 C.F.R. § 208.13(b)(2)(i). Jalloh claimed that he made a disparaging comment about Lieutenant Barry and the military, that Lieutenant Barry overheard the comment, and that the military briefly searched for him after he ran away from the military camp. We conclude that, under these circumstances, Jalloh's fear that he will be harmed upon return to Guinea is not reasonable. Notably, Jalloh presented no significant evidence that the Guinean military has a continuing inclination to persecute him for a single statement criticizing the treatment of individuals associated with the previous government. As noted, because Jalloh failed to establish eligibility for asylum, he necessarily failed to meet the more stringent showing required to qualify for withholding of removal. Mudric, 469 F.3d at 102 n.8. In addition, the BIA properly denied Jalloh's CAT claim because

6

the record evidence does not compel the conclusion that he is "more likely than not" to be tortured if returned to Guinea. Tarrawally v. Ashcroft, 338 F.3d 180, 187 (3d Cir. 2003).

Finally, we conclude that the BIA did not abuse its discretion in denying Jalloh's motion to reopen and reconsider. Jalloh does not challenge the BIA's conclusion that his motions were untimely. 8 C.F.R. §§ 1003.2(b)(2); 1003.2(c)(2). The time and number requirements do not apply, however to motions to reopen that rely on evidence of "changed country conditions," INA § 240(c)(7)(C)(ii) [8 U.S.C. § 1229a(c)(7)(C)(ii)], or "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3). We find no merit in Jalloh's efforts to establish changed county conditions so as to excuse his time-barred motion to reopen. Indeed, as the Board properly found, the evidence submitted with Jalloh's motion to reopen "describe[d] a continuance of the on-going alleged threat from [Lieutenant] Barry and . . . the military that gave rise to [Jalloh's] first claim." Notably, when Jalloh appeared before the IJ in June 2009, the military regime which allegedly seeks to persecute him had already seized power in a coup. See Filja v. Gonzales, 447 F.3d 241, 252 (3d Cir. 2006) (holding that the term "previous hearing" in § 1003.2(c)(3)(ii) refers to the proceedings before the IJ). Moreover, Jalloh failed to sufficiently explain why he could not have discovered or presented at the previous hearing an affidavit indicating that police and soldiers are continuing to look for him. Finally, we agree that increased

7

violence against political opponents in Guinea, as evidenced by news articles describing atrocities committed by government forces at a political rally in September 2009, does not establish Jalloh's prima facie eligibility for relief, especially where Jalloh has not identified himself as a member of an opposition party.

For the foregoing reasons, we will deny the petitions for review.[1]

---

[1] Jalloh's Motion for Leave to File a Supplemental Appendix and to Expand the Record is denied because the documents he seeks to have considered are part of the record in C.A. No. 10-4310.