IMG1-055                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1447
_____

EKATERINA STOLBOVA,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,

Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A088-650-653)
Immigration Judge: Steven A. Morley

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 20, 2014

Before:  RENDELL, GREENAWAY, JR. and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 27, 2014)
_____

O P I N I O N
_____

PER CURIAM

Ekaterina Stolbova ("Stolbova") petitions for review of the Board of Immigration Appeals' final order of removal. For the reasons that follow, we will deny the petition for review.

Stolbova, a native and citizen of Russia, was admitted to the United States on a J-1 nonimmigrant visa for work and travel with authorization to remain until September 16, 2006. On August 14, 2008, Stolbova was personally served with a Notice to Appear which charged that she was removable under Immigration & Nationality Act ("INA") § 237(a)(1)(C)(i), 8 U.S.C. § 1227(a)(1)(C)(i), as an alien who failed to maintain nonimmigrant status. Stolbova conceded that she was removable as charged, and, on December 22, 2008, she applied for asylum, withholding of removal, and protection under the Convention Against Torture, claiming a fear of persecution by the Russian Government on the basis of her evangelical Christian faith. Stolbova claimed that the Russian Government persecutes Protestants, and that evangelicals are labeled a destructive sect. She also requested voluntary departure in the alternative.

Proceedings continued on January 7, 2010 and counsel noted that Stolbova's husband, Alex Degtyarev, also was in immigration proceedings and had filed an application for cancellation of removal where he had listed Stolbova as a derivative beneficiary.[1] Stolbova's counsel also noted that Degtyarev was facing criminal charges that could affect the cancellation application. Stolbova's case was continued multiple times, pending the outcome of her husband's criminal case. On October 6, 2011, when

---

[1] Stolbova did not pursue cancellation of removal on her own, because she does not have the required ten years of physical presence.

2

the criminal matter still was not resolved, counsel for Stolbova agreed to have Stolbova's case severed from her husband's case.

On May 15, 2012, at her merits hearing, Stolbova sought relief based on her conversion to evangelical Christianity while in the United States and her baptism in May, 2009. She conceded that she had not been persecuted in the past, and she relied solely on her allegations of a well-founded fear of persecution and on an alleged pattern or practice of persecution against protestant Christians in Russia. Stolbova, Ruslan Murin, the pastor of her current church, and Steven Swerdlow, her expert on religious freedom in Russia, testified in support of her application. Stolbova testified that she began attending the Trumpet Call Charismatic Christian Church in Philadelphia in 2006, and that her family in Russia did not support her new religion. She did not believe that she would be able to practice her new religion freely in Russia because treatment of Protestants there is poor. She claimed that Protestants were beaten up, that churches were set on fire, and that she heard that local authorities would not prosecute those who harmed Protestants.

Pastor Murin testified that his evangelical church, the Foursquare Church Trumpet Call, also exists in Russia; he knows of ten or more such churches in Russia. While in Sochi to attend a Foursquare Church conference, Murin met with many Russian pastors. He testified that he had been afraid to travel to Russia, but that he went so that he could attend the conference. While in Russia, he attended one of the churches and had no problems, but he learned that some pastors had difficulty renting out a building, or difficulty with paperwork because they were Protestants. Pastor Murin believed that

3

Stolbova would have problems if she returned to Russia because Orthodoxy is the official religion there.

Swerdlow testified that the Russian Government restricts proselytizing minority sects, and evangelical Christians face harassment and discrimination. Minority groups are fined or threatened with fines, prevented from acquiring places of worship, and have administrative barriers placed upon them. He noted that Russia was placed on the "watch list" in 2009 by the United States Congressional Commission on International Religious Freedom. He believed that intolerance concerning minority religious groups is displayed in public statements, and that it was acceptable behavior for authorities to harass minority sects. He testified that the mistreatment of minority religious groups was pervasive throughout Russia. Swerdlow noted that, on July 6, 2011, prosecutors summoned church members of the Great Pentecostal Church for questioning, but he did not know if any of the members were detained.

On June 19, 2012, the Immigration Judge issued a written decision denying relief. The IJ determined first that Stolbova was credible and that she had corroborated her claim. But the IJ determined that her asylum application was untimely filed, that the harm she fears in Russia does not rise to the level of persecution, and that she failed to show that it is more likely than not that she will be tortured by the Russian Government on the basis of her evangelical religious beliefs. More specifically, her asylum application was not filed within the one-year deadline, 8 U.S.C. § 1158(a)(2)(B), and Stolbova did not qualify for any of the exceptions. Her conversion to the Protestant faith

4

did not warrant applying the exception to the one-year deadline because she did not file her application within a reasonable period of time after this change in her circumstances.

With respect to withholding of removal and the allegation of a well-founded fear of persecution, the IJ noted that the State Department's 2010 International Religious Freedom Report verified that minority religious sects in Russia are harassed and face discrimination. In addition, Stolbova's news articles and expert testimony verified that Russia interferes with worship by denying building licenses, for example. Nevertheless, there was no pattern or practice of persecution of evangelical Christians in Russia. There is harassment and discrimination by local authorities but no threats to a practitioner's life or freedom to practice her beliefs sufficient to constitute persecution.[2] The IJ alternatively determined that Stolbova failed to establish that it would not be reasonable for her to relocate to an area in Russia where she would not be targeted on account of her religion. The IJ ordered Stolbova's removal to Russia and Stolbova appeal to the Board of Immigration Appeals.

On January 29, 2014, the Board dismissed the appeal. The Board agreed that Stolbova's asylum application was untimely filed, and that she did not qualify for any of the exceptions. The Board further agreed that Stolbova's proofs did not establish a well-founded fear of persecution. The Board agreed with the IJ that she did not show a pattern or practice of persecution, and that she also did not show an individualized fear of persecution. The Board concluded that Stolbova had failed to establish that Russian

---

[2] During testimony, the IJ noted that the State Department International Religious Freedom Report estimates that Protestants make up the second largest group of Christians in Russia with an estimated 2 million followers and 3,500 registered organizations.

5

authorities were aware of her religious conversion in the United States, or would become aware of it upon her return to Russia, and noted that Stolbova did not offer evidence concerning other individuals who were similarly situated to her and who may have encountered difficulty after their return to Russia. The Board also affirmed the IJ's CAT determination. Last, the Board noted that Stolbova had filed a motion to remand and to consolidate her case with her husband's case, but the Board denied the motion because counsel previously had agreed to sever the two cases. The Board also would not remand the matter so that Stolbova could pursue voluntary departure because the record did not reflect that she had applied for voluntary departure in the first instance before the IJ.

Stolbova has timely petitioned for review. We generally have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). However, we lack jurisdiction over the agency's determination that the asylum application was untimely because Stolbova does not challenge it on constitutional or legal grounds. See 8 U.S.C. § 1158(a)(3); Sukwanputra v. Gonzales, 434 F.3d 627, 633-34 (3d Cir. 2006). A late-filed application may be excused if the applicant demonstrates "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application...." 8 U.S.C. § 1158(a)(2)(D). The existence of changed country conditions or extraordinary circumstances that may excuse untimeliness is a discretionary and factual determination over which we do not have jurisdiction. See Jarbough v. Att'y Gen. of U.S., 483 F.3d 184, 189 (3d Cir. 2007). Stolbova uses the words "due process" to describe her argument, see Petitioner's Brief, at 14-21, but we are not bound by labels. See id. Here, the agency considered all of the

6

evidence presented and applied the correct standard. Stolbova's argument is nothing more than that the agency got the facts wrong, and is thus unreviewable.

We will deny the petition for review to the extent of our jurisdiction. Administrative findings of fact are reviewed for substantial evidence, and the scope of review under this deferential standard is narrow. See Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004). We must treat the agency's findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992). To establish entitlement to withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), the applicant must demonstrate a "clear probability" of persecution through the presentation of evidence that it is more likely than not that she would be subject to persecution if deported. See Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003). This is a more stringent standard than the asylum standard. See Mudric v. Att'y Gen. of U.S., 469 F.3d 94, 102 n.8 (3d Cir. 2006) (citing Janusiak v. Immigration & Naturalization Serv., 947 F.2d 46, 47 (3d Cir. 1991)).

Substantial evidence supports the agency's determination that Stolbova failed to establish eligibility for withholding of removal on the basis of her religious persecution claim. The type of harm that Stolbova fears will result from practicing her evangelical Christianity in Russia – social ostracism, economic disadvantages, and/or discrimination – does not constitute persecution, see Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993). Persecution has a well-established meaning; it includes confinement, torture, and threats to life or freedom, including severe economic

7

restrictions, but it does not include treatment that is merely unfair or unjust. See id. Persecution is an extreme concept that is not defined expansively. See id. Even Stolbova's expert testified that the harassment of proselytizing minority religious sects varies widely based on the attitudes in particular regions and was therefore neither systemic nor organized, and her pastor testified that there are at least ten churches of Stolbova's same congregation in existence in Russia. Her pastor even attended an international Foursquare Church conference in Sochi without difficulty.

In short, Stolbova did not show that she would be singled out for persecution in Russia on the basis of her evangelical faith, and her country conditions evidence does not compel the conclusion that there is a pattern or practice of persecution of evangelical Christians in Russia, for the reasons given by the agency, see Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005). The agency correctly determined that evangelical Christians may well face harassment and discrimination in Russia, but persecution is an extreme concept, and Stolbova's proofs were insufficient to show that it is more likely than not that she will be subject to persecution in Russia. Furthermore, the record does not compel the conclusion that Stolbova, because of her religious beliefs, would more likely than not be tortured by or with the consent or acquiescence of the Russian government upon her return, 8 C.F.R. §§1208.16(c)(2), 1208.18(a)(1). Although the record reflects that evangelical Christians face varying amounts of discrimination and harassment, Stolbova failed to show that that Russian authorities were even aware of her religious conversion, or would become aware of it.

Last, Stolbova failed to show that the Board abused its discretion in denying her motion to remand and reconsolidate her case, see Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). Stolbova provided no evidence to support the reconsolidation of her case with her husband's case, and she consented to the severing of the two cases in the first instance, A.R. 459-62. The Board also did not abuse its discretion in denying her request for a remand so that she could pursue voluntary departure. Aside from her initial statement that she intended to apply for voluntary departure, A.R. 411, the record shows that she made no further argument before the IJ in support of voluntary departure despite being given multiple opportunities to do so just prior to the end of her merits hearing, A.R. 574-76. The IJ cannot be faulted for failing to rule on a request that was effectively abandoned, and Stolbova has failed to persuade us that the Board's conclusion that she failed to apply for voluntary departure before the IJ in the first instance was not arbitrary, capricious, or contrary to law, see Sevoian, 290 F.3d at 174.

For the foregoing reasons, we will deny the petition for review.