NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 17-3008

———————

PERWAISH, a/k/a Perwaish Lnu, a/k/a Perwaish Khan,
a/k/a Perwaish Hadi Khan, a/k/a Fnu Perwaish,
                                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                                    Respondent

———————

On Petition for Review from an Order of the
Board of Immigration Appeals
(BIA No.: A205-235-513)
Immigration Judge: Honorable John B. Carle

———————

Submitted under Third Circuit L.A.R. 34.1(a)
on April 17, 2018

Before:  GREENAWAY, JR., RENDELL and FUENTES, *Circuit Judges*

(Opinion filed: July 3, 2018)

———————

O P I N I O N*

———————

———————

   * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

**RENDELL**, *Circuit Judge*:

Petitioner Perwaish, a native and citizen of Pakistan, seeks our review of the Board of Immigration Appeals ("BIA")'s order denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because substantial evidence supported the agency's conclusions, we will deny the petition for review.

## I. BACKGROUND

*A. Facts*

Perwaish is a Pakistani citizen from the Swat region, currently residing in the United States. He is married with eight children, and his wife and children, sister, and parents all still live in the Swat Valley. Until 2010, Perwaish worked as a crewman and a farmer. In 2009, Perwaish began supporting the Pakistani army in its efforts to drive the Taliban out of the Swat Valley region. He carried supplies and ammunition to the army and provided information about the Taliban's whereabouts.

In 2009, Taliban supporters kidnapped Perwaish at gunpoint when he was at a market. He was bound and forced to walk for two hours, then held in a dark room for two days, and then relocated to another room for four days. The attackers repeatedly asked him why he was supporting the Pakistani army. They beat and kicked him, and he sustained bruises from kicks to his lower back. He still has a visible rope-burn mark on his arm from the kidnapping. He was released after his father paid a ransom of US$15,000. The kidnappers warned him not to assist the Pakistani army any longer or he

2

would be killed. Perwaish spent two days in a hospital after his release, but he did not report the incident to the police or the army.

Perwaish stayed at his house in Swat for a week and a half, but then went on to live in Mardan, Peshawar, and Karachi. He experienced no harm in these locations, but he testified that he felt unsafe. In late 2009, he moved his family back to Swat but made plans to leave Pakistan. He continued to aid the Pakistani army, but others in the community warned him that the Taliban were looking for him. However, he did not experience any harm. He left Pakistan in April 2011 and was admitted to the United States on a non-immigrant visa, authorized for one month. He overstayed his visa without authorization, which resulted in the present proceedings.

Perwaish's family remains in Pakistan, in the same home. He maintains that they have not experienced harm because they did not assist the Pakistani army. But he believes *he* faces harm by supporting the army. He testified that he only remains in the United States because he fears he will be harmed if he returns, and that he misses his home and life in Pakistan.

When asked why he thinks the Taliban are looking for him, he testified that they have a "strong network" and they "would find him." A.R. 79. On cross-examination, Perwaish testified that people in Pakistan are "safer in their own area" and that "his family would be safer in their village than in Karachi." *Id.*

*B. Procedural History*

The Department of Homeland Security ("DHS") charged Perwaish with removability under 8 U.S.C. § 1227(a)(1)(B), as an alien who had remained in the United

3

States for a time longer than permitted.  Represented by counsel, Perwaish appeared before an Immigration Judge ("IJ") and conceded his removability as charged.

Perwaish applied for the following relief from removal:  asylum, withholding of removal, and CAT protection.  He was the only witness who testified at his merits hearing.  The parties submitted background documents describing conditions in Pakistan, including the UK's 2014 report on Pakistan and the State Department's 2015 *Human Rights Report* on Pakistan.[1]

Although the IJ made a positive credibility finding, he denied Perwaish's application for asylum, withholding of removal, and CAT protection.  Regarding asylum, the IJ found that Perwaish did not suffer harm rising to the level of past persecution.  But even assuming he had, DHS rebutted the presumption of a well-founded fear of future persecution by showing that Perwaish could safely relocate to another part of Pakistan and that it would be reasonable to do so.  Based on his finding of ineligibility for asylum, the IJ also determined Perwaish was necessarily ineligible for withholding of removal, which carries stricter requirements.  Finally, the IJ found that Perwaish was ineligible for CAT protection because he failed to show that he would more likely than not be tortured by the Pakistani government or by a private individual with the government's acquiescence.

Perwaish appealed to the BIA.  The Board dismissed the appeal, agreeing that Perwaish was ineligible for relief, but affirming the IJ's alternate holding that Perwaish

---

[1] References to the State Department Report are styled as "Exh. A," because while the IJ took judicial notice of the updated report, a printed copy was not included in the administrative record.

"could reasonably relocate within Pakistan." A.R. 4. The BIA also held that the IJ's factual finding that Taliban control of Pakistan is limited to certain areas of the country was not clearly erroneous.

This petition for review followed.

## II. DISCUSSION

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252. When the BIA issues its own opinion, we review both that opinion and any portion of the IJ's opinion that the BIA adopted. *Sandie v. U.S. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009). We review the agency's factual determinations under the "deferential substantial evidence standard," *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006), and will uphold those determinations unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review the IJ's and BIA's legal determinations *de novo*. *Toussaint v. Att'y Gen.*, 455 F.3d 409, 413 (3d Cir. 2006).

In his petition for our review of the BIA's ruling, Perwaish argues that the BIA erred in affirming the IJ's denial of his application for asylum and withholding of removal, and his application for CAT relief. Because his arguments are unavailing, we will deny his petition for review.

*A. Asylum Petition*

The Attorney General may grant asylum to an alien who can establish "refugee" status. 8 U.S.C. § 1158(b)(1)(A). To prove he is a refugee, an alien must show he is unable or unwilling to return to his home country "because of persecution or a well-

5

founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). One way the Government may rebut that presumption is by showing that "the applicant could avoid future persecution by relocating to another part of the applicant's country of nationality," and "under all the circumstances, it would be reasonable to expect the applicant to do so." *Id.* § 1208.13(b)(2)(ii). Factors the agency may consider when determining whether relocation would be reasonable include: "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." *Id.* § 1208.13(b)(3).

On appeal, Perwaish contends that the IJ and BIA erroneously determined that he could not establish past or future persecution. We disagree. Even if he could establish past persecution[2] and therefore gain the benefit of a presumption of a well-founded fear of future persecution, the Government rebutted this presumption by demonstrating he could safely relocate to another part of Pakistan. The BIA affirmed the IJ's finding that Perwaish and his family had suffered no harm in Pakistan after the kidnapping, and

---

[2] The BIA did not address the IJ's conclusion that Perwaish's "abduction was an isolated incident and does not warrant a finding of past persecution." A.R. 64. It is therefore not properly before us on this appeal. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

indeed had safely relocated several times. This conclusion was supported by substantial evidence.

We agree with the BIA that there is sufficient support for the IJ's alternative finding that the Government rebutted any presumption of Perwaish's well-founded fear of persecution. The IJ pointed to record evidence showing that Perwaish successfully relocated within Pakistan for seven months following the kidnapping. Moreover, Perwaish's employment as a crewman took him away from Sirsinai for extended periods, and the ships he worked on departed from Karachi and other major cities. No evidence was submitted suggesting that Perwaish had any health or economic constraints rendering relocation unreasonable. *See id.* § 1208.13(b)(3).

Perwaish contends that the BIA improperly ignored favorable evidence in evaluating whether he could reasonably relocate. In particular, he avers that the BIA and IJ ignored Perwaish's family members' affidavits stating that the family was in danger and his testimony that the Taliban has a "strong network" throughout Pakistan, thus rendering any area of the country perilous. A.R. 163.

While the IJ and the BIA did not specifically refer to his family's affidavits, the IJ made clear that he had "considered all admitted evidence regardless of whether the Court specifically mentions it in this decision." A.R. 57. Although the agency "may not ignore evidence favorable to the alien" or "cherry-pick a few pieces of evidence," we do not require the BIA to "discuss every piece of evidence mentioned by an asylum applicant." *Huang v. Att'y Gen.*, 620 F.3d 372, 388 (3d Cir. 2010). An IJ's statement that he considered all record evidence—absent a showing that wide swaths of evidence were

7

ignored, as in *Huang*—"is all that is required." *Green v. Att'y Gen.*, 694 F.3d 503, 509 (3d Cir. 2012). Unlike in *Huang*, where the agency ignored the petitioner's significant evidence that she would be forcibly sterilized upon removal to China, 620 F.3d at 388, here it was reasonable for the IJ not to credit the affidavits' vague and at times identical language.[3] Further, these statements directly contradicted Perwaish's own testimony that his family did not have any problems when they went to Mardan and Pershawar. He stated that his family was not threatened when he left to work on the shipping crew, nor was he personally threatened when he returned in September 2010.

As to Perwaish's claim that the Taliban "would be able to locate him anywhere," Pet'r Br. at 22, the IJ pointed to record evidence showing that changes in the Pakistani government had mitigated the Taliban's power and reach throughout the country and that urban areas are safer than rural ones. Moreover, Perwaish himself testified that he safely returned to Sirsinai for seven months following the kidnapping. Given our highly deferential standard of review, we cannot conclude that the IJ's determination lacks support in the record. On the contrary, substantial evidence supported the agency's determination that Perwaish could reasonably avail himself of internal relocation.[4]

*B. CAT Relief*

_____

[3] For example, Perwaish's mother's affidavit said "their threats never end, [and they] suffer a lot and [their] family shift[s] from one city to [an]other." A.R. 323. And his father's and wife's affidavits used the same sentence, that "they [follow] [them] everywhere where [they] went." A.R. 326, A.R. 329.

[4] As we conclude that substantial record evidence supports the agency denial of Perwaish's asylum request, it follows that his application for withholding of removal, relief, which involves a "more stringent applicable standard," was also properly denied. *See Mudric v. Att'y Gen.*, 469 F.3d 94, 102 n. 8 (3d Cir. 2006).

8

Under the regulations implementing the Convention Against Torture, the Attorney General may not remove an alien to a country where it is "more likely than not" that he will be "tortured." 8 C.F.R. § 1208.16(c)(2). Torture is defined as "pain and suffering" inflicted by or "with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1). An alien bears the burden of proving she is eligible for CAT relief, *id.* § 1208.16(c)(2), but need not show a nexus between a particular characteristic and the torture. *Matter of S-V-*, 22 I & N Dec. 1306, 1311 (BIA 2000).

Here, the BIA affirmed the IJ's determination that Perwaish was ineligible for CAT relief because he failed to show that a public official would acquiesce to his torture by the Taliban. A public official acquiesces if she participates in the torture, colludes with the torturer, or is "willfully blind." *Silva-Rengifo v. U.S. Att'y Gen.*, 473 F.3d 58, 70 (3d Cir. 2007). The BIA affirmed the IJ's finding that the Pakistani government is "taking specific steps to combat terrorism by the Taliban." A.R. 4. Before the agency, Perwaish and the Government offered conflicting reports as to the Pakistani government's success in eradicating terrorist groups, and the prevalence of extrajudicial killings and torture across the country. But Perwaish did not present evidence that the Pakistani government would collude with the Taliban or remain willfully blind to torture. The record therefore does not compel us to conclude that the IJ erred in denying CAT relief.

### III. CONCLUSION

We see no reason to disturb the BIA's reasoned ruling.  Accordingly, we will deny

Perwaish's petition.